UNITED STATES of America, Plaintiff,

v.

**Frantz BENNETT, Defendant.**

**Crim. No. 82–59.**

United States District Court,
D. Puerto Rico.

May 11, 1982.

José R. Aguayo, Asst. U. S. Atty., Hato Rey, P. R., for plaintiff.

Joàquin Monserrate Matienzo, Hato Rey, P. R., for defendant.

## DECISION AND ORDER

TORRUELLA, District Judge.

There is pending Defendant's Motion to Suppress and related matters, some of which have previously been ruled upon by the Court. Defendant is charged in a three-count indictment with possession of cocaine with intent to distribute (21 U.S.C. 841(a)(1)), and attempted possession of cocaine and heroin with intent to distribute (21 U.S.C. 846 and 841(a)(1)). The incidents which give rise to the issues before us are as follows:

On March 19, 1982 a meeting took place in Room 652 of the Plaza Dominicana Hotel in Santo Domingo, Dominican Republic. Present at the meeting were Alberto Fernández, a Drug Enforcement Administration (DEA) agent, Allan Bachellier, another DEA agent, who was using the undercover name of "Tony Madrid" throughout this meeting and at other times pertinent hereto, a DEA confidential informant by the name of Díaz (C. I. Díaz), and Defendant. The avowed purpose of this meeting was to secure entry of an airplane loaded with cocaine into the Republic of Haiti. In fact, however, the true purpose of the meeting, as far as DEA was concerned, was to gather evidence against Defendant. Defendant, a citizen of Haiti and the brother-in-law of that country's President, allegedly claimed that he could secure safe entry and exit in and out of Haiti, and provide the necessary "protection" for this operation. In the course of the meeting an agreement was allegedly reached with Defendant as part of which Defendant would travel to Puerto Rico to receive payment for his services and to escort the airplane into Haiti.

After the meeting Defendant left the room and the DEA agents remained. The room in which the meeting took place had been rented by Bachellier under his alias for the purpose of recording the conversation, which in fact was done by DEA Agent Juan Rodríguez from the room next door, also rented by DEA under the name of "Jason Romero", Rodríguez's undercover name.

Thereafter, on March 25, 1982 Defendant called from Haiti to San Juan, Puerto Rico to a DEA undercover telephone number which had been provided to him by

Fernández. He informed Fernández that he would arrive in San Juan on the 26th, and asked to be met at the airport. This conversation was recorded by Fernández at the San Juan end.

On March 26, Defendant again called Agent Fernández from Haiti to the San Juan undercover number, but a bad telephone connection forced Fernández to cancel it and call him back. In this conversation, which was again recorded by Fernández, Defendant allegedly invited his San Juan associates to go to Haiti with the cocaine and the money. After some discussion Fernández convinced Defendant to stick to the original plan and to come to Puerto Rico instead.

About three hours later Defendant arrived at San Juan International Airport, where he was met by Agent Fernández and taken to Room 1106 of the Dupont Plaza Hotel, which was again registered in Agent Bachellier's undercover name, "Tony Madrid." As in Santo Domingo, Room 1106 was electronically compromised, with Agent Rodríguez in the room next door recording the conversation. Inside Room 1106 was also located a video recording machine which photographed the parties to the ensuing events. An hour long discussion took place between Bachellier, Fernández and Defendant, during which certain material evidence was allegedly exchanged with Defendant, and final arrangements made regarding entry into Haiti. Defendant then left the room by himself.

Shortly thereafter, just outside the Dupont Plaza Hotel, Defendant was arrested by DEA Agents Danaceck, Nazario and Rodríguez. Immediately after his arrest Agent Danaceck advised Defendant of his rights, reading from a standard DEA card which contains said information. Defendant indicated that he understood and they proceeded into a waiting automobile for the ride to the DEA office. At this point Agent Danaceck again advised Defendant of his rights, with a similar response by Defendant concerning his understanding of the same.

Thereafter a conversation ensued during which Defendant allegedly made various incriminating statements which the Government will seek to offer into evidence at the trial. Defendant remained in custody from approximately 5:00 P.M., when he was arrested, to about 10:00 P.M., when a Magistrate was finally located and the Defendant brought before him.

Defendant moves for suppression of the recordings alleging that they were not authorized pursuant to the so-called Federal Wiretapping Act (Act), 18 U.S.C. 2510 *et seq.* As to the conversations that took place in the Dominican Republic, and those recorded in San Juan but in which the other party, Defendant, was located in Haiti, Defendant claims that such interceptions could not legally be authorized by a United States court and thus should be suppressed.

■ Turning first to the Haitian communications, we find that the law that controls the legality of an interception is the law of the place wherein the *interception* takes place. *United States v. Cotroni,* 527 F.2d 708, 711 (C.A.2, 1975), *cert. den.,* 426 U.S. 906, 96 S.Ct. 2226, 48 L.Ed.2d 830 (1976). We note in passing, however, that there is no contention that such interception is in any way prohibited by Haitian law. In this case the Haitian communications were intercepted in Puerto Rico and it is thus the law here that applies. Although the *lex loci* of the Commonwealth of Puerto Rico prohibits the interception of such communications,[1] nevertheless 18 U.S.C. 2511(2)(c) of the Act[2] permits such interceptions if con-

---

1. Article II, Section 10, of the Commonwealth's Constitution proscribes the interception of telephonic communications. Furthermore, 33 L.P. R.A. §§ 4185 and 4186, contain penal sanctions for the interception and/or recording of private verbal communications, whether telephonic or through any other means, without the express consent of all parties concerned.

2. 18 U.S.C. 2511(2)(c) provides that:
 "It shall not be unlawful under this chapter for a person acting under color of law to intercept a wire or oral communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception."

sent is given to the same by at least one of the parties to the communication. It has been consistently held that the provisions of the Act permitting consensual interception of communications are paramount over inconsistent state law. *United States v. Escobedo*, 430 F.2d 603, 607 (C.A.7, 1970), *cert. den.*, 402 U.S. 951, 91 S.Ct. 1632, 29 L.Ed.2d 122 (1971); *United States v. McGuire*, 381 F.2d 306 (C.A.2, 1967), *cert. den.*, 389 U.S. 1053, 88 S.Ct. 800, 19 L.Ed.2d 848 (1968); *United States v. Pérez*, 465 F.Supp. 1284 (D.C.P.R., 1979). The Haitian conversations are consensual pursuant to 18 U.S.C. 2511(2)(c), and are thus admissible in evidence. 18 U.S.C. 2515.

 As to the Dominican interceptions, Defendant's arguments are, to say the least, difficult to follow. First of all, there is no question but that all the parties to the communication except Defendant, agreed to the interception. Secondly, Defendant makes no claim to the illegality of such interceptions pursuant to the *lex loci* of the Dominican Republic. That in itself should be sufficient to validate the interception according to the tenets of *Cotroni*. However, Defendant contends, in what we can only describe as convoluted logic, that such action is illegal because no court of the United States could authorize such an interception outside its jurisdiction. The short answer to that is that it is true that no United States court could authorize such action, but that it does not follow that the interception is therefore illegal. Simply stated, the Act is inapplicable extra-territorially. *United States v. Toscanino*, 500 F.2d 267, 279, reh. den., 504 F.2d 1380 (C.A.2, 1974); *United States v. Cotroni*, supra, *Stowe v. Devoy*, 588 F.2d 336, 341 (C.A.2, 1978), *cert. den.*, 442 U.S. 931, 99 S.Ct. 2862, 61 L.Ed.2d 299 (1979); *Berlin Democratic Club v. Rumsfeld*, 410 F.Supp. 144 (D.C. D.C., 1976). See also 1968 U.S.Code Cong. & Adm.News, 90th Cong. 2d Sess. pp. 2112, 2178. So are its prohibitions. Noncompliance with an inapplicable statute is irrelevant. That is why in *Cotroni, Stowe* and *Berlin Democratic Club*, the intercepts outside the United States without warrant or compliance with the Act were held proper

and admissible evidence. Lastly, even assuming the applicability of the Fourth Amendment to the Dominican factual situation, a contention which is very much in doubt (see Note, "Foreign Security Surveillance and The Fourth Amendment", 87 H.L.R. 976, 988 (1974)), the intercepts in question are clearly within permissible governmental action, Defendant lacking an expectancy of privacy as to the recorded conversations. *United States v. Craig*, 573 F.2d 455, 474 (C.A.7, 1977), *cert. den.*, 439 U.S. 820, 99 S.Ct. 82, 58 L.Ed.2d 110 (1978).

Defendant seeks suppression of the video and voice recordings made during the Dupont Plaza conversations relying on *United States v. Padilla*, 520 F.2d 526 (C.A.1, 1975). This reliance is ill-conceived. In that case, DEA rented two rooms in a hotel, "one to be used solely as the temporary residence of the Defendant while he stayed in San Juan. Before the defendant had arrived ... agents of DEA installed a hidden microphone in his room and set up a receiving unit in the room next door, without the knowledge or consent of the defendant" (520 F.2d at 527). After the Defendant checked in, DEA recorded several conversations in his hotel room with DEA agents. The Court of Appeals, citing *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) and *Hoffa v. United States*, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966), held that these recordings were suppressible as violative of the Fourth Amendment because they intruded on said defendant's expectancy of privacy vis-a-vis *his* hotel room.

 That situation is clearly distinguishable from the facts presented in this case. Defendant held no more expectation of privacy in conversing in "Tony Madrid's" room in San Juan than he did in Santo Domingo. The room was in Bachellier's undercover name, Defendant did not check into it or stay in it, and his actions clearly demonstrated that he was a transient visitor to "Tony Madrid's" room rather than one with even a temporary *animus manendi* therein. Defendant brought no luggage and stayed a

relatively short amount of time. When arrested immediately after leaving the room, Defendant had no room key or other indicia of his attachment to the hotel room other than the evidence allegedly picked up by him therein. There is not even the barest evidence of an *animus revertendi*. The *Padilla* rule is clearly inapplicable and the suppression is denied.

■ Defendant has moved for disclosure of C. I. Díaz' name and address as a participating informant, and for production of said person for interview by counsel. At the hearing on this matter the Government stated for the record that C. I. Díaz is located in the Dominican Republic wherein he is a national of said country and that he refuses to place himself within the jurisdiction of the United States. The Government has in fact announced that it does not intend to present said person as a witness at Defendant's trial.

Defendant is claiming a defense of entrapment. C. I. Díaz therefore may have relevant information regarding the factual situation revolving around this issue. The problem of course is that he is outside the subpoena power of this Court. The Court can no more order that he submit himself to interview by Defendant than it can order his presence at trial either as a witness for the Government or defense. C. I. Díaz has voluntarily agreed to be interviewed in the Dominican Republic by Defendant's counsel. Defendant is also aware of his last name. Considering that he is outside of the Court's subpoena jurisdiction, in any event, and that he is equally unavailable to both sides for trial, nothing is to be gained by Defendant in terms of evidence by ordering disclosure by the Government of the C. I.'s name and address in the Dominican Republic. The Court, in so ruling, is balancing Defendant's right of access to information which may be supportive of his defense, or exculpatory under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), with the Government's equally valid interest in guaranteeing the safety of an informant operating in a foreign country, under circumstances which limit the Government's ability to ensure his personal safety. The Government has granted Defendant open file discovery and will produce the informer in the Dominican Republic. After said interview, if the circumstances so require, Defendant may, by a timely motion raise such matters as are appropriate for further relief hereunder. See *United States v. Ariza-Ibarra*, 651 F.2d 2 (C.A.1, 1981), cert. den., —— U.S. ——, 102 S.Ct. 392, 70 L.Ed.2d 209 (1981).

■ Finally, Defendant's post-arrest statements were given after appropriate advice as to his constitutional rights and under circumstances which lead us to conclude that they are voluntary and admissible in evidence pursuant to 18 U.S.C. 3501.

Wherefore, it is ORDERED that:

1. Defendant's Motion to Suppress the interceptions of the oral communications of March 19, 1982 at Room 652 of the Plaza Dominicana Hotel, the oral communications of March 25, and 26, 1982 to and from the San Juan undercover telephone, the oral communications at Room 1106 of the Dupont Plaza Hotel, and the video recording thereof, are hereby DENIED.

2. That the Government produce C. I. Díaz in the Dominican Republic, to be interviewed by Defendant's lawyer, and

3. That Defendant's post arrest statements are voluntary and admissible in evidence pursuant to 18 U.S.C. 3501.

IT IS SO ORDERED.