**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Leon GOODSON, Defendant-Appellant.**

No. 28873.

United States Court of Appeals,
Fifth Circuit.

March 18, 1971.

Gerald P. Urbach, Dallas, Tex., Geary, Brice, Barron & Stahl, Dallas, Tex., for appellant.

Eldon B. Mahon, U. S. Atty., Andrew Barr, Asst. U. S. Atty., James F. Gaulding, Dallas, Tex., Asst. Regional Counsel, Int. Rev. Service, for appellee.

Before TUTTLE, THORNBERRY and INGRAHAM, Circuit Judges.

INGRAHAM, Circuit Judge:

Appellant Goodson was convicted upon a jury verdict of guilty of violation of the National Firearms Act, 26 U.S.C. § 5801, et seq. The offense charged arose from the possession of a firearm ("sawed-off" shotgun), as defined by 26 U.S.C. § 5848, alleged to have been made in violation of 26 U.S.C. § 5821, such possession being violative of § 5851 of the Act.[1]

In appealing his conviction, Goodson has raised five points of error—(1) insufficiency of the evidence to support the conviction; (2) error by the trial court in instructing the jury; (3) admission into evidence of two shotgun shells seized in contravention of Goodson's Fourth Amendment rights; (4) violation of appellant's Fifth Amendment right against compulsory self-incrimination; and (5) the punishment

---

1. The statutes involved in appellant's conviction, which are here set out in pertinent part, were part of the former National Firearms Act (codified as 26 U.S.C. §§ 5801 through 5862). Subsequent to the filing of the indictment in the instant case, the provisions of the National Firearms Act were amended in toto on October 22, 1968, Pub.L. 90–618 and are now part of the new Gun Control Act of 1968 (codified as 26 U.S.C. §§ 5801 through 5872).

26 U.S.C. § 5848. *Definitions*

"For purposes of this chapter—

(1) *Firearm.*—The term 'firearm' means a shotgun having a barrel or barrels of less than 18 inches in length, or a rifle having a barrel or barrels of less than 16 inches in length, or any weapon made from a rifle or shotgun (whether by alteration, modification, or otherwise) if such weapon as modified has an overall length of less than 26 inches. * * *
*    *    *    *    *
(4) *Shotgun.*—The term 'shotgun' means a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of the explosive in a fixed shotgun shell to fire through a smooth bore either a number of ball shot or a single projectile for each single pull of the trigger."

26 U.S.C. § 5821. *Rate, exceptions, etc.*

"(a) *Rate.*—There shall be levied, collected, and paid upon the making in the United States of any firearm (whether by manufacture, putting together, alteration, any combination thereof, or otherwise) a tax at the rate of $200 for each firearm so made.
*    *    *    *    *
(c) *By whom paid; when paid.*—The tax imposed by subsection (a) shall be paid by the person making the firearm. Such tax shall be paid in advance of the making of the firearm.
*    *    *    *    *
(e) *Declaration.*—It shall be unlawful for any person subject to the tax imposed by subsection (a) to make a firearm unless, prior to such making, he has declared in writing his intention to make a firearm, has affixed the stamp described in subsection (d) to the original of such declaration, and has filed such original and a copy thereof. The declaration required by the preceding sentence shall be filed at such place, and shall be in such form and contain such information, as the Secretary or his delegate may by regulations prescribe. The original of the declaration, with the stamp affixed, shall be returned to the person making the declaration. If the person making the declaration is an individual, there shall be included as part of the declaration the fingerprints and a photograph of such individual."

26 U.S.C. § 5851. *Possessing firearms illegally*

"It shall be unlawful for any person to receive or possess any firearms which has at any time been transferred in violation of sections 5811, 5812(b), 5813, 5844, or 5846, or which has at any time been made in violation of section 5821, or to possess any firearm which has not been registered as required by section 5841. Whenever on trial for a violation of this section the defendant is shown to have or to have had possession of such firearm, such possession shall be deemed sufficient evidence to authorize conviction, unless the defendant explains such possession to the satisfaction of the jury."

imposed was cruel and unusual in violation of the Eighth Amendment to the United States Constitution.

Because we have concluded on the facts of this case that appellant's first point of error requires reversal of his conviction we pretermit discussion of the remaining points of error assigned on this appeal.

Upon appellant's trial in the court below, the government introduced through accomplice witness testimony evidence of the defendant's possession of the weapon at the time and place alleged in the indictment and that the weapon was a "firearm" as that term is defined in § 5848(1) of the Act, note 1, *supra*. The government introduced into evidence as well a report from the custodian of the National Firearms Registration and Transfer Record, which indicated that no person had registered possession of the described weapon [20 gauge Winchester-Western (Canada) shotgun], nor had any person acquired the firearm by importation, transfer or making, nor had anyone paid a transfer or making tax with respect to the transfer or making of the subject firearm. It was upon this evidentiary base that the government's case was submitted to the jury which returned a verdict of guilty.

Although challenging the sufficiency of the evidence on the issue of possession, the primary thrust of appellant's argument focuses upon the government's failure to prove that the firearm in question was made [manufactured, put together or altered] *"in the United States"*—a condition prerequisite to liability for payment of the making tax and filing of the declaration of intent to make, § 5821, note 1, *supra*, and, *a fortiori*, a violation of § 5851 under the indictment as laid.

While the government candidly admits that there was no proof that the firearm in question was made "in the United States", it contends that proof of that fact is not required to secure a conviction under § 5851, or, alternatively, that the evidentiary presumption contained in § 5851 operates to cast upon the defendant the burden of proving that the firearm was *not made* "in the United States." The reasoning of the government is predicated upon the fact that the shotgun was originally manufactured in Canada and, so the government's theory goes, the possible "made in Canada" is an affirmative defense which the government is not required to negate. We find the government's contention on both points to be untenable.

▮  We note initially that mere possession of a firearm as defined in § 5848 is not per se unlawful—only when that possession is conjoined with the failure of the possessor or another to comply with one or more of the enumerated regulatory sections does a violation of § 5851 occur. As the Tenth Circuit noted in Waters v. United States, 328 F.2d 739 (10th Cir. 1964):

"Section 5848(1) describes the physical characteristics of the firearms to which the provisions of § 5851 are applicable. But, the enumerated sections in § 5851 describe the illegal attributes of firearms, the possession of which is condemned by § 5851. This section, i.e., § 5851, then provides that proof of possession of 'such firearms * * * shall be deemed sufficient evidence to authorize conviction * * *.' The phrase 'such firearm' has reference not only to a firearm defined in § 5848(1), but also to a firearm which is illegally possessed for non-compliance with one of the enumerated regulatory sections, viz., a firearm 'which has at any time been made in violation of section 5821,' or 'which has not been registered as required by section 5841.' *It is therefore, incumbent upon the Government to prove, not only possession of a firearm defined in § 5848 (1), but that the firearm is one illegally possessed, for failure to comply with one of the enumerated regulatory sections."* 328 F.2d at 742 (Emphasis supplied).

▮  We likewise reject the government's argument that the last sentence

of § 5851, note 1 *supra*, commonly referred to as a presumption, relieves the government of proving that the firearm was altered in the United States or, at a minimum, shifts the burden to the defendant to show that the firearm was *not* made or altered in the United States. The burden is upon the government to prove each and every element of the crime beyond a reasonable doubt. United States v. Collier, 381 F.2d 616 (6th Cir. 1967), cert. denied, 390 U.S. 1043, 88 S.Ct. 1639, 20 L.Ed.2d 304 (1968); Bryan v. United States, 373 F. 2d 403 (5th Cir. 1967). Moreover, as the indictment is drawn, violation of § 5821 is an "indispensable ingredient" of the crime defined and charged in § 5851. United States v. Casson, 288 F.Supp. 86 (D.Del.1968). While it is true that the government is not required to adduce positive evidence to support a negative averment in the indictment, Rossi v. United States, 289 U.S. 89, 53 S.Ct. 532, 77 L.Ed. 1051 (1933), that is not a creature of the law with which we are here concerned, notwithstanding the government's alchemistic attempts at transmutation. What we here deal with is a positive and affirmative fact [a making in the United States] absent which § 5821 has no applicability and § 5851 is without foundational support. The simple answer to the government's contention is that if the firearm was not "made" in the United States, non-compliance with the making tax and declaration provisions of § 5821 has no operative legal effect. The presumption contained in § 5851 is unavailing to the government in this regard, for as a rule of evidence it does not come into play until possession is shown of a firearm "made" in contravention of § 5821. See, e. g., Sipes v. United States, 321 F.2d 174 (8th Cir. 1963), cert. denied, 375 U.S. 913, 84 S.Ct. 208, 11 L.Ed.2d 150. The presumption of § 5851, as other statutory presumptions, does no more than accord to the government's evidence its natural probative force and effect. United States v. Gainey, 380 U.S. 63, 85 S.Ct. 754, 13 L.Ed.2d 658 (1965). The cases cited by the government in support of its argument are inapposite to our consideration of the issue before us, i.e., the validity of a conviction wherein an essential affirmative act is neither proven nor admitted.

The fact of a "making in the United States" like any other fact, is provable by direct or circumstantial evidence and the permissible inferences drawn therefrom. This the government failed to do and such omission is fatal to its case. To hold to the contrary would require the defendant to prove a negative [not made in the United States]—a burden the government has recoiled from and one which we do not here readily impart to the defendant.

Ordinarily on this state of the facts we would remand to the court below for a new trial. However, the record reveals it is doubtful that the government can supply the defect in the evidence upon a remand. That being the case and in view of the fact that the defendant did not ask for a new trial in the court below, Wright, Federal Practice and Procedure: Criminal § 470 (1969), the judgment of conviction is reversed and the case remanded with directions to enter judgment of acquittal.

Reversed and remanded with directions.