**UNITED STATES of America, Appellee,**

v.

**Dale R. JAVINO, Defendant–Appellant.**

**No. 773, Docket 91–1490.**

United States Court of Appeals, Second Circuit.

Argued Jan. 22, 1992.

Decided April 6, 1992.

Barbara D. Cottrell, Asst. U.S. Atty., Albany, N.Y. (Frederick J. Scullin, Jr., U.S. Atty. for the Northern District of New York, Bernard J. Malone, Jr., Asst. U.S. Atty., on the brief), for appellee.

Adrian L. DiLuzio, Mineola, N.Y. (Laurie S. Hershey, on the brief), for defendant-appellant.

Before: NEWMAN and KEARSE, Circuit Judges, and CEDARBAUM, District Judge *.

KEARSE, Circuit Judge:

Defendant Dale R. Javino appeals from a final judgment of the United States District Court for the Northern District of New York, Thomas J. McAvoy, *Judge*, convicting him on three counts of possession of a destructive device, to wit, an incendiary bomb, in violation of various provisions of chapter 53 of Title 26 of the United States Code, 26 U.S.C. §§ 5801–5872 (1988). He was convicted of knowing receipt and possession of a destructive device made in violation of chapter 53, in violation of 26 U.S.C. §§ 5822, 5861(c), and 5871 (count 1); knowing receipt and possession of a destructive device that was unregistered, in violation of 26 U.S.C. §§ 5841, 5861(d), and 5871 (count 2); and knowing receipt and possession of a destructive device not identified by a serial number, in violation of 26 U.S.C. §§ 5861(i) and 5871 (count 3). He was sentenced principally to serve three concurrent 21–month terms of imprisonment. On appeal, Javino challenges the sufficiency of the evidence, the instructions to the jury, and the performance of his trial counsel. For the reasons below, we conclude that Javino's conviction on count 1 must be reversed for lack of evidence as to one element of the offense charged in that count; we affirm the convictions on counts 2 and 3.

## I. BACKGROUND

Taken in the light most favorable to the government, the evidence at trial showed the following. In August 1990, Javino had been involved in a dispute with Michael Constantino and Lynn Fitzgerald, residents of Amsterdam, New York, and had threatened to kill them. Just after midnight on August 3, Constantino and/or Fitzgerald observed Javino in an automobile lurking near their home, at times driving slowly by, and for a time parked nearby with its lights off. Fitzgerald reported to Amsterdam police that as the car drove by she had seen a gun sticking out of the window. Shortly thereafter, the police stopped the car, which was owned and driven by Milton Block and in which Javino was a passenger.

In plain view on the back seat of the car was an incendiary bomb consisting, in part, of a 40–ounce Dole glass juice bottle nearly filled with clear liquid; attached to the bottle with electrical tape was a large explosive and detonation device with a wick. Javino and Block were arrested for possession of the bomb. Block testified at trial that he had not known the bomb was in his car until after the arresting officers seized it. In a postarrest interview, Javino stated that the bomb belonged to him and that he had planned to use it to burn brush on property located in another town. He declined to reveal the name of the person who had made the bomb, stating that he did not want to get that person in trouble.

* Honorable Miriam Goldman Cedarbaum, of the United States District Court for the Southern District of New York, sitting by designation.

Laboratory analysis at the federal Bureau of Alcohol, Tobacco and Firearms ("BATF") revealed that the bottle contained a highly inflammable mixture. The detonation device contained 239.2 grains of an explosive powder, more than 100 times the amount that would be used in the largest firecracker permissible under BATF regulations. Detonation of the incendiary bomb would have had a "blast effect," spraying glass and generating heat in the range of 4,500 degrees Fahrenheit.

A search of BATF files revealed that neither Javino nor Block had registered the bomb. Indeed, no one had ever obtained a permit or license from BATF to manufacture such a device.

Chapter 53 of 26 U.S.C., also known as the National Firearms Act (the "Act"), governs, *inter alia*, the making, importation, registration, and possession of "firearms," a term that is defined to include "destructive device[s]," including devices in the nature of explosive or incendiary bombs, *see* 26 U.S.C. §§ 5845(a), (f). Javino was indicted on three counts relating to the bomb found in the car: knowingly receiving and possessing a device that (1) was made in violation of the Act, in violation of 26 U.S.C. §§ 5822, 5861(c), and 5871 (count 1); (2) was unregistered, in violation of 26 U.S.C. §§ 5841, 5861(d), and 5871 (count 2); and (3) was not identified by a serial number, in violation of 26 U.S.C. §§ 5861(i) and 5871 (count 3).

Javino's defense at trial was principally that, as the bomb had been found in a car owned and driven by Block, Javino had not possessed the bomb. In support of that contention, Javino relied on the testimony of Block (a) that Javino did not put the bomb in the car and (b) that prior to trial, Block had told Javino's attorney that Block had constructed the bomb. Javino also presented evidence as to an innocent explanation for his being in the neighborhood of the Constantino–Fitzgerald home. The jury convicted Javino on all counts, and he was sentenced as indicated above.

Following the imposition of sentence, Javino moved in the district court for bail pending appeal, contending that there were several grounds for reversal of his convictions. He argued principally that as to each count the government had failed to prove an essential element of the offense, and that he had been denied the effective assistance of counsel by reason of, *inter alia*, his attorney's failure to request that the jury be instructed that it was required to acquit if it found those elements unproven. As to count 1 of the indictment, Javino argued that a destructive device made outside of the United States would not have been made in violation of chapter 53, and that the government had not proven that the bomb he possessed was made in the United States.

In a Memorandum–Opinion and Order dated November 20, 1991 ("Decision"), the district court denied Javino's motion. The court rejected Javino's claim of ineffective assistance of counsel on the ground that counsel's performance fell within the range of reasonable professional assistance. With respect to the sufficiency challenge on count 1, the court found that there was no requirement that the government prove that the incendiary bomb had been made in the United States. Noting that § 5801(a) imposes a tax on "every *importer*, manufacturer, and dealer in firearms," and that § 5802 "addresses 'registration of *importers*, manufacturers, and dealers,'" Decision at 8 (emphasis therein), the court concluded that the Act governed any making of a device defined in the Act, wherever the making occurred:

Section 5845(m) defines "manufacturer" as "*any* person engaged in the business of manufacturing firearms." 26 U.S.C. § 5845(m). Congress has not limited any of these sections to only products made in the United States nor is such an intent apparent from a fair reading of the statute.

Further, the purpose of the chapter (which was enacted as part of Congress' omnibus crime bill) was to strengthen firearm provisions and to curb the transfer of converted military and homemade weapons. *U.S. [v.] Greer*, 588 F.2d 1151 (6th Cir.1978) cert. denied 440 U.S. 983, 99 S.Ct. 1794, 60 L.Ed.2d 244. It is only

logical that the provisions thereof would apply to both foreign and domestically produced weapons. Without such an application, foreign weapons would be less controlled than domestic and the purpose of the chapter would be frustrated.

Decision at 8–9 (emphasis therein).

## II. DISCUSSION

On appeal, Javino pursues his challenges to the sufficiency of the evidence and the adequacy of the trial court's instructions to the jury, and he contends that in various respects he received ineffective assistance of counsel. For the reasons below, we find merit only in his challenge to his conviction on count 1.

### A. *Essential Elements of the Offenses*

Javino contends that the government failed to prove an essential element of the offense in each count. As to count 1, he claims that the government was required to prove that the incendiary bomb he possessed had been made in the United States. As to count 2, he claims that the government was required to prove he knew (a) that registration of the device was required, and (b) that there had been no registration. As to count 3, he claims that the government was required to prove that the bomb failed to comply with a regulation concerning identification of such devices. Javino argues that none of these elements was proven and that the court failed to instruct the jury that it should find him innocent in the absence of their proof. Though he concedes that he did not seek such instructions at trial, he contends that the failure to instruct on the missing elements was plain error.

 It is axiomatic that in a criminal prosecution, the government bears the burden of proving beyond a reasonable doubt every fact necessary to constitute the crime with which the defendant is charged. *Davis v. United States,* 160 U.S. 469, 487, 16 S.Ct. 353, 358, 40 L.Ed. 499 (1895) (burden of proof "is on the prosecution from the beginning to the end of the trial and applies to every element necessary to constitute the crime"); *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970); *United States v. Gjurashaj,* 706 F.2d 395, 398 (2d Cir.1983). The failure to instruct on an essential element of the offense generally constitutes plain error, permitting appellate review even if the defendant has failed to object to the instruction at trial. *See, e.g., United States v. Mazzei,* 700 F.2d 85, 87–88 (2d Cir.), *cert. denied,* 461 U.S. 945, 103 S.Ct. 2124, 77 L.Ed.2d 1304 (1983); *United States v. De Marco,* 488 F.2d 828, 832 (2d Cir.1973). If there was such a failure to instruct, but there was sufficient evidence in the record to permit the jury to find the element proven beyond a reasonable doubt, the appropriate remedy is vacation of the conviction and remand for a new trial. *See, e.g., United States v. Londono–Villa,* 930 F.2d 994, 1001 (2d Cir.1991). If the evidence at trial was insufficient to prove that element, we must reverse and order dismissal of that count. *See Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).

Applying these principles to the present case, we conclude that though Javino's arguments with respect to counts 2 and 3 lack merit, his conviction on count 1 must be reversed and that count dismissed.

### 1. *Count 1*

 Count 1 of the indictment charged Javino with receipt and possession of a destructive device "made" in violation of the Act, in violation of 26 U.S.C. §§ 5822 and 5861(c). The latter section provides that "It shall be unlawful for any person ... to receive or possess a firearm made in violation of the provisions of this chapter." This provision does not prohibit the mere possession of an incendiary bomb, but only possession of one that was "made" in violation of some other section of the Act. *See, e.g., United States v. Combs,* 762 F.2d 1343, 1346 (9th Cir.1985). Section 5822, the provision of chapter 53 that governs the "making" of firearms, provides as follows:

No person shall make a firearm unless he has (a) filed with the Secretary [of the Treasury] a written application, in duplicate, to make and register the firearm on

the form prescribed by the Secretary; (b) paid any tax payable on the making and such payment is evidenced by the proper stamp affixed to the original application form; (c) identified the firearm to be made in the application form in such manner as the Secretary may by regulations prescribe; (d) identified himself in the application form in such manner as the Secretary may by regulations prescribe, except that, if such person is an individual, the identification must include his fingerprints and his photograph; and (e) obtained the approval of the Secretary to make and register the firearm and the application form shows such approval. Applications shall be denied if the making or possession of the firearm would place the person making the firearm in violation of law.

26 U.S.C. § 5822. The government contends that this provision applies even to firearms made outside the United States, and that, in any event, the evidence at trial was sufficient to establish that the bomb possessed by Javino had been made in the United States. We reject both contentions.

It is a "long-standing principle of American law 'that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States.'" *EEOC v. Arabian American Oil Co.,* — U.S. —, —, 111 S.Ct. 1227, 1230, 113 L.Ed.2d 274 (1991) (quoting *Foley Bros. v. Filardo,* 336 U.S. 281, 285, 69 S.Ct. 575, 577, 93 L.Ed. 680 (1949)); *see also Argentine Republic v. Amerada Hess Shipping Corp.,* 488 U.S. 428, 440–41, 109 S.Ct. 683, 690–91, 102 L.Ed.2d 818 (1989); *Stowe v. Devoy,* 588 F.2d 336, 341 (2d Cir.1978), *cert. denied,* 442 U.S. 931, 99 S.Ct. 2862, 61 L.Ed.2d 299 (1979); *United States v. Cotroni,* 527 F.2d 708, 711 (2d Cir.1975), *cert. denied,* 426 U.S. 906, 96 S.Ct. 2226, 48 L.Ed.2d 830 (1976). This canon of construction "assume[s] that Congress legislates against the backdrop of the presumption against extraterritoriality." *EEOC v. Arabian American Oil Co.,* 111 S.Ct. at 1230. Thus, "unless there is 'the affirmative intention of the Congress clearly expressed,' [*Benz v. Compania Naviera Hidalgo,*

*S.A.,* 353 U.S. 138, 147, 77 S.Ct. 699, 704, 1 L.Ed.2d 709 (1957) ], we must presume it 'is primarily concerned with domestic conditions.'" *EEOC v. Arabian American Oil Co.,* 111 S.Ct. at 1230 (quoting *Foley Bros. v. Filardo,* 336 U.S. at 285, 69 S.Ct. at 577).

There is no language in the National Firearms Act, nor have we seen any in the legislative history, that would suggest that Congress intended § 5822 to have extraterritorial effect. In contrast, with respect to substances such as narcotics, Congress has expressly sought to give extraterritorial effect to some of its prohibitions. For example, in 21 U.S.C. § 959(c) (1988), Congress prohibited the manufacture or distribution of controlled substances with intent to import into the United States, and stated "[t]his section is intended to reach acts of manufacture or distribution committed outside the territorial jurisdiction of the United States." No such language appears in the National Firearms Act. In the absence of any language clearly expressing an intent to legislate with respect to firearms made outside of the United States, we decline to impute to Congress the intent that nowhere in the world may a person, without violating § 5822, make a "firearm" without, *inter alia,* providing his photograph and fingerprints to the United States Secretary of the Treasury, obtaining the approval of the Secretary, and paying a tax to the United States.

█ Even had Congress intended all foreign manufacturers of firearms to comply with the requirements set out in § 5822, there is substantial question as to whether it could lawfully have done so. Though Congress may prescribe laws concerning conduct outside of the territorial boundaries of the United States "that has or is intended to have substantial effect" within the United States, *Restatement (Third) of Foreign Relations Law* § 402(1)(c) (1987) ("*Restatement*"); *see, e.g., In re Marc Rich & Co., A.G.,* 707 F.2d 663, 666 (2d Cir.), *cert. denied,* 463 U.S. 1215, 103 S.Ct. 3555, 77 L.Ed.2d 1400 (1983); *see also Restatement* § 402(1)(a), (b), (2), and (3) (setting forth additional accepted bases for extraterritorial application of legislation), it

may not regulate such conduct "when the exercise of ... jurisdiction is unreasonable," *Restatement* § 403(1); *see, e.g., United States v. Davis*, 767 F.2d 1025, 1036–37 & n. 22 (2d Cir.1985). The reasonableness of an attempt to exercise extraterritorial control depends on such factors as the extent to which the conduct "has substantial, direct, and foreseeable effect" in the legislating country, and the extent to which other states "may have an interest in regulating the activity." *Restatement* §§ 403(2)(a), (g). In light of the substantial interests that other countries have in regulating the manufacture of firearms within their own borders, and the attenuated impact that a foreign-made firearm is likely to have within this country—unless the firearm is imported into the United States—application of § 5822 to all foreign manufacturers would likely be ruled unreasonable.

Nor is the fact that a foreign-made device may gain contact with the United States by entering this country a basis for inferring that Congress intended the "making" section to apply to manufacture outside of the United States, for the Act deals specifically with both the importation of such devices and with the possession of imported devices. Thus, in a different subsection of § 5861 Congress has provided that it is unlawful "to receive or possess a firearm which has been *imported or brought into* the United States in violation of section 5844," 26 U.S.C. § 5861(k) (emphasis added); and in § 5844, it has sharply limited the legality of such importation, *see* 26 U.S.C. § 5844 (permitting importation of firearms for use by the United States or any State, for scientific or research purposes, or for use as a sample by a registered importer or dealer). Further, without any proof of where a firearm was made, the government may prosecute a person who possesses such a device in the United States if it has not been registered with the appropriate United States agency or that is not identified in accordance with federal regulation.

In sum, in light of (1) the traditional presumption against extraterritorial effect

discussed above, (2) the absence of any statement by Congress contrary to that presumption in connection with the National Firearms Act, and (3) the presence in the Act of other provisions that expressly reach (a) foreign-made devices that are imported into the United States, or (b) the possession of devices that have not been registered or properly identified regardless of where they were made, we conclude that § 5822 itself governs only devices made in the United States. *Accord United States v. Goodson*, 439 F.2d 1056, 1059 (5th Cir. 1971) (construing essentially same regulatory scheme in Act's predecessor). Accordingly, in order to establish a violation of §§ 5822 and 5861(c), the government must prove beyond a reasonable doubt that the device in question was made in the United States.

Such proof may, of course, be circumstantial, *accord United States v. Goodson*, 439 F.2d at 1059 ("a 'making in the United States' like any other fact, is provable by direct or circumstantial evidence and the permissible inferences drawn therefrom"), and the government argues in the present case that its proof of manufacture in the United States was sufficient:

The jury had before it the Dole fruit juice jar which had been filled with the flammable liquid, it's [*sic*] label still attached. (GA 323—Government Exhibit 1D). This one piece of physical evidence alone would have been a sufficient basis from which the jury could conclude (had it been so charged) that the device was made in the United States. Any error, therefore, is harmless.

(Government's brief on appeal at 21 n. 15.) We disagree. At oral argument of this appeal, the government conceded that it had made no explicit effort to prove where the incendiary device was made, and it acknowledged that the Dole bottle, despite its label, did not bear any indication of its own provenance. Further, even if there had been an indication as to where the bottle itself was made or where it had originally been filled with fruit juice, those facts would have little probative effect as to where the highly combustible liquid had

been put into the bottle after its juice contents were gone, or where the detonating device and wick had been added. Since the government has not called to our attention any other evidence in the record as to where the incendiary bomb was made, and our own review persuades us that the government has not overlooked any such evidence, we conclude that, even viewed in the light most favorable to the government, the evidence failed to establish beyond a reasonable doubt that the incendiary bomb possessed by Javino was made in the United States.

Accordingly, proof of an essential element of count 1 was lacking, and Javino's conviction on that count must be reversed.

### 2. *Counts 2 and 3*

■ Javino's challenges to the sufficiency of the evidence and instructions on counts 2 and 3 of the indictment do not require extended discussion. Count 2 charged Javino with violation of § 5861(d) of the Act, which makes it unlawful for any person "to receive or possess a firearm which is not registered to him." 26 U.S.C. § 5861(d). The government is not required to prove that the defendant knew that the incendiary bomb he possessed was not registered. *See United States v. Freed*, 401 U.S. 601, 91 S.Ct. 1112, 28 L.Ed.2d 356 (1971):

> The Act requires no specific intent or knowledge that the [destructive devices] were unregistered.... [T]he only knowledge required to be proved [is] knowledge that the instrument possessed was a firearm.

*Id.* at 607, 91 S.Ct. at 1117. Dealing with hand grenades, the *Freed* Court noted that regulations of firearms are adopted in the interest of public safety, and "one would hardly be surprised to learn that possession of hand grenades is not an innocent act." *Id.* at 609, 91 S.Ct. at 1118. Likewise, crude varieties of incendiary bombs are well known to be within the scope of the Act. *United States v. Cruz*, 492 F.2d 217, 219 (2d Cir.) (Molotov cocktail), *cert. denied*, 417 U.S. 935, 94 S.Ct. 2649, 41 L.Ed.2d 239 (1974). Given the nature of

the device possessed by Javino—a container filled with combustible liquid and having attached to it a large explosive device with a wick, it was not error for the trial court not to instruct the jury that in order to find him guilty on count 2 it must find that he knew the incendiary bomb he possessed was unregistered.

■ Count 3 charged Javino with receipt and possession of a destructive device not identified by a serial number, in violation of 26 U.S.C. §§ 5861(i) and 5871. Section 5842(c) of the Act states that destructive devices such as bombs are to be identified "in such manner as the Secretary [of the Treasury] may by regulations prescribe," 26 U.S.C. § 5842(c), and one such regulation permits the maker or importer of such a destructive device to apply to the BATF by letter for authorization to use an identification other than a serial number if imprinting, stamping, or engraving, etc., would be dangerous, *see* 27 C.F.R. § 179.-102 (1991). The court instructed the jury that with respect to count 3 the government was required to prove beyond a reasonable doubt to secure a conviction that "the destructive device was not identified by a serial number as required by the National Firearms Act." (Trial Transcript p. 229.) Javino challenges this instruction because it did not advise the jury that the bomb could permissibly, under the above regulation, have borne some other form of identification. For a number of reasons, his challenge is meritless.

■ First, the failure to mention that identification other than by serial number could have been authorized under 27 C.F.R. § 179.102 was an omission as to potentially applicable law, not an omission as to an element of the offense. Since Javino did not request that the court instruct the jury with respect to this regulation, his present challenge is waived. Moreover, even had he requested such a charge, its omission would not have been error, since the court is not required to give an instruction for which there is no evidentiary basis in the record. *See, e.g., United States v. Paccione*, 949 F.2d 1183, 1200 (2d Cir.1991); *United States v. Leonard*, 524 F.2d 1076,

1084 (2d Cir.1975), *cert. denied,* 425 U.S. 958, 96 S.Ct. 1737, 48 L.Ed.2d 202 (1976). Here, the only evidence on the subject was the government's proof that there had been no application by Javino or Block with respect to the incendiary bomb found in their possession.

### B. *The Claim of Ineffective Assistance of Counsel*

Javino's claim of ineffective assistance of counsel is principally that his trial attorney (1) failed to request instructions on offense elements as discussed above, (2) failed to request an instruction that Block's testimony should be "carefully scrutinized," (3) failed to pursue an available statutory defense, and (4) failed to request a downward departure from the imprisonment range specified in the federal Sentencing Guidelines ("Guidelines"). None of these contentions has merit.

▪ In order to prevail on a claim of ineffective assistance of counsel, a defendant must show both (1) that his attorney's representation was unreasonable under the "prevailing professional norms," *Strickland v. Washington,* 466 U.S. 668, 688, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984), and (2) that, but for the deficiency, there is a reasonable probability that "the result of the proceeding would have been different," *id.* at 694, 104 S.Ct. at 2068. *See, e.g., United States v. Simmons,* 923 F.2d 934, 956 (2d Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 2018, 114 L.Ed.2d 104 (1991); *United States v. Matos,* 905 F.2d 30, 32 (2d Cir.1990). In assessing reasonableness of performance, we must view the defendant's claim through the eyes of trial counsel, not through "the distorting effects of hindsight." *Strickland v. Washington,* 466 U.S. at 689, 104 S.Ct. at 2065. Actions or omissions by counsel that " 'might be considered sound trial strategy' " do not constitute ineffective assistance. *Id.* (quoting *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955)). The merits of Javino's claims do not pass the Strickland test.

▪ Javino's first claim, that counsel failed to request instructions to the jury with respect to missing elements of the government's proof, need not detain us long. To the extent that this claim focuses on counts 2 and 3, it must fail since, as discussed in Part II.A.2. above, the court's instructions on those counts were correct as given. To the extent that Javino focuses instead on count 1, his ineffectiveness claim is at best superfluous, since we have concluded that the flawed proof requires a reversal of Javino's conviction on that count.

▪ Javino's claim that he was denied effective assistance by counsel's failure to request an instruction that Block's testimony should be "carefully scrutinized" is frivolous. Javino relied on Block's testimony as support for his defense that he did not possess the bomb. Thus, Javino's attorney brought out testimony by Block that Javino had not put the bomb in Block's car, and that Block had previously told Javino's attorney that Block himself had constructed the bomb. Javino's defense rested heavily on Block's statements, and the allegedly desirable instruction that Block's testimony should be carefully scrutinized would surely have been counterproductive.

▪ Javino also argues that, instead of attempting to show that Javino had not been in possession of the bomb, counsel should have pursued a technical defense based on a section stating that "[t]he term 'destructive device' shall not include any device which is neither designed nor redesigned for use as a weapon," 26 U.S.C. § 5845(f). This Court has noted that "a device which otherwise appeared to fall within the statute would be exempted from its requirements if it could be shown that it was not designed as a weapon." *United States v. Posnjak,* 457 F.2d 1110, 1116 (2d Cir.1972); *see United States v. Reindeau,* 947 F.2d 32 (2d Cir.1991). Whatever the availability of such reasoning in the present case, we decline to second-guess counsel's strategic decision to pursue the lack-of-possession defense in preference to attempting to persuade the jury, in the face of, *inter alia,* the evidence as to Javino's suspicious prearrest behavior and his death threats to Constantino and Fitzgerald, that the highly explosive bomb was not designed as a weapon.

Finally, there is no merit in Javino's contention that counsel's performance was constitutionally defective because of his failure to request a downward departure from the 21–27–month imprisonment range prescribed by the Guidelines on account of the fact that his wife was expecting twins or the fact that Block, who pleaded guilty to a state-court misdemeanor charge related to these events, received only a six-month sentence. "Family ties and responsibilities ... are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range." Guidelines § 5H1.6. And the fact that a coparticipant in the offense has received a lower sentence is not a basis for a downward departure even if the lower sentence is imposed in the federal proceeding, *see, e.g., United States v. Joyner,* 924 F.2d 454, 459–61 (2d Cir.1991), much less in a state proceeding.

## CONCLUSION

We have considered all of Javino's arguments on this appeal and, except as indicated above, have found them to be without merit. The judgment of conviction on counts 2 and 3 is affirmed; as to count 1, the judgment is reversed, and the matter is remanded for dismissal of that count.