**Alexander DE JESUS, Petitioner,**

v.

**David MILLER, Superintendent, Respondent.**

**No. 99 Civ. 11314(VM).**

United States District Court, S.D. New York.

June 29, 2004.

---

Alexander De Jesus, Napanoch, NY, pro se.

John Nicholas Iannuzzi, Iannuzzi and Iannuzzi, New York City, for Petitioner.

Rona Z. Feinberg, Robert M. Morgenthau, District Attorney's Office, New York City, for Respondent.

## DECISION AND ORDER

MARRERO, District Judge.

### I. BACKGROUND

Petitioner Alexander DeJesus ("DeJesus"), pro se, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction in New York State Supreme Court, New York County, of one count of murder in the second degree and one count of assault in the first degree. DeJesus's indictment on these and other charges arose out of the injury of Luis Lopez ("Lopez") and killing of Antonio Mejia ("Mejia") during a fight early in the morning of January 19, 1991. DeJesus, who was armed with a gun, fired several times, and was arrested by police as he fled the scene. In a statement made to the police during later interrogation, he admitted having fired a gun during this incident, but alleged he did so in self-defense. For these offenses he was sentenced to consecutive terms of imprisonment of twenty-five years to life and seven and one-half to fifteen years, respectively.

DeJesus appealed to the New York State Supreme Court, Appellate Division, which affirmed his conviction. On March 8, 1999, the New York Court of Appeals denied DeJesus's application for leave to appeal. DeJesus filed a petition for a writ of habeas corpus in this Court in September 1999. At DeJesus's request, the petition was later dismissed without prejudice in order to enable him to present to the state courts an unexhausted claim of ineffective assistance of appellate counsel. That petition was likewise denied by the Appellate Division. DeJesus then returned to this Court with the instant petition. Applying the equitable tolling doctrine, the Court ruled the amended petition timely filed.

In support of his challenge to his conviction and confinement, DeJesus asserts the trial court violated his due process rights, and his rights to a fair trial and to notice of the charges against him, by reason of the trial court's: (1) erroneous supplemental instructions to the jury concerning the defense of justifiable use of physical force; (2) submission to the jury of an annotated verdict form; (3) jury instruction making DeJesus liable for the conduct of an uncharged individual; and (4) excessive sentencing. DeJesus also raised a claim alleging that appellate counsel's failure to present on appeal certain arguments DeJesus contends should have been asserted deprived him of effective assistance of counsel on appeal.

Magistrate Judge Kevin N. Fox, to whom this Court referred the petition, issued a Report and Recommendation (the "Report") dated May 10, 2004, recommending that the writ be denied and the petition be dismissed. The Report is incorporated and attached hereto. DeJesus, whose deadline to respond to the Report was extended to June 21, 2004, filed objections dated June 15, 2004 (the "Objections"). He addresses each of the four grounds the Report considered and rejected.

Pursuant to 28 U.S.C. § 636(b)(1)(C), any portion of a Magistrate Judge's Report and Recommendation to which objection is made is subject to *de novo* review. The Court is also authorized to accept,

reject, or modify, in whole or in part, the Magistrate Judge's findings or recommendations. Accordingly, this Court has reviewed *de novo* the full record of each of the issues DeJesus raises. On this basis the Court denies the writ and dismisses DeJesus's petition.

## II. *DISCUSSION*

### A. *JURY CHARGES*

■ DeJesus takes issue with the trial court's supplemental instructions to the jury regarding the defense of justification, which he characterizes as coercive, and with the court's use of an annotated verdict form. Magistrate Judge Fox found these claims unexhausted because in neither of his state appellate court applications did DeJesus raise any point alleging violation of federal law, or any state authority relying on federal constitutional doctrine, in connection with these claims. Upon review of DeJesus' petition and the objections he raised to the Report, the Court agrees.

Nothing in DeJesus's papers could be fairly construed to suggest to the state appellate courts that DeJesus was asserting violation of the federal constitutional rights with respect to these two issues. *See Daye v. Attorney Gen.*, 696 F.2d 186, 194 (2d Cir.1982) (declaring that a petitioner may fairly present a federal constitutional claim to a state court by relying on federal or state cases employing federal constitutional analysis, or by asserting the claim in terms that call to mind a specific constitutional right or that present a pattern of facts well within the mainstream of federal constitutional litigation). DeJesus is therefore now barred under applicable state law from asserting these grounds as a basis for any further challenge to his conviction in state court. *See* New York Crim. Proc. Law § 440.10(2)(c).

### B. *EXCESSIVE SENTENCING*

■ In his Objections, DeJesus points out that another ground he had asserted in his petition challenging his sentencing as excessive was not addressed by the State or the Magistrate Judge and thus DeJesus contends, he should prevail by virtue of the State's "waiver" of the issue. DeJesus claimed in his direct appeal that his sentence to consecutive terms was unduly harsh in view of his age, strong family ties, employment and minor criminal history at the time of sentencing. This argument as presented on direct appeal rested entirely on state law factors which New York courts apply in reviewing applications to reduce sentences. With regard to this claim as well there is no indication in DeJesus's brief suggesting any violation of federal constitutional right or claim based on federal law. The sentence DeJesus was given for each of the crimes of which he was convicted fell within the permissible statutory range. The Appellate Division considered and rejected DeJesus's challenge to his sentencing. *See People v. DeJesus*, 255 A.D.2d 256, 682 N.Y.S.2d 129 (1st Dep't 1998).

■ Under New York law, the sentencing decision is committed to the sound discretion of the trial court based on the facts and considerations before the court at the time of sentencing. *See People v. Farrar*, 52 N.Y.2d 302, 437 N.Y.S.2d 961, 419 N.E.2d 864, 865 (1981). In affirming DeJesus's conviction and dismissing his appeal, the Appellate Division implicitly determined that the trial court had properly exercised its discretion. DeJesus offers no basis under federal law to justify a decision by this Court to overturn that determination. Nor does the Court view DeJesus's sentencing as a miscarriage of justice in view of the broad discretion sentencing courts exercise within the range the statute prescribes. Accordingly, the

Court finds no grounds to grant DeJesus habeas relief on this basis.

DeJesus makes no showing in either the petition or in his Objections of cause for his default or particular prejudice resulting from it, or for a finding that failure by the federal court upon habeas review to consider the defaulted grounds would result in a fundamental miscarriage of justice. *See Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Bousley v. United States,* 523 U.S. 614, 622, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). DeJesus's Objections merely make general reference to the "innocence gateway" he asserts. Upon examination of the trial and appellate record the Court is not persuaded that there was insufficient evidence upon which DeJesus could have been convicted, and that he is actually innocent of the charges of which he was tried and found guilty.

The trial evidence here established that DeJesus, by his own statement to the police, admitted that at the time of the underlying incident he fired a gun at two men, one of whom allegedly was running away. There was no evidence that either of those two men was the victim, or that the victim was armed, thus casting doubt on the soundness of DeJesus's justification defense. Moreover, the jury heard eyewitness testimony that DeJesus was seen reaching into his pocket and running towards Mejia just before shots were heard. Others testified to having seen DeJesus firing a gun towards Lopez and striking him. A police officer testified that he saw DeJesus fire a gun in the direction of Mejia. Other officers also testified to having seen DeJesus running away from the scene and tossing a handgun to the ground as he fled. There was also sufficient evidence that DeJesus acted in concert with others, including Charlie Chong ("Chong"), Raymond "Ricky" Pabon ("Pabon") and a woman identified as Shelly, in entering into the confrontation that had earlier occurred involving Shelly.

The jury considered the defense of justification as instructed, from which it is fair to assume that it found the prosecution's witnesses credible, discredited DeJesus's theory and considered the weight of the evidence otherwise sufficient to find DeJesus guilty beyond a reasonable doubt. DeJesus presents nothing in his challenge that would support a finding that his conviction was contrary to the evidence, or that would otherwise raise a reasonable doubt in the mind of a rational trier of fact.

## C. *CONSTRUCTIVE AMENDMENT*

■ DeJesus claims that the trial court erred in its instructions to the jury making DeJesus criminally liable for the conduct of another person not charged in the indictment. He alleges that he was thereby denied the constitutional right of notice of the charges he had to defend, and thus of a fair trial, because the evidence did not conclusively establish that he appeared at the scene of the crime with the requisite intent to kill and failed to prove that no one else involved in the fight was armed.

The evidence at trial, however, established that DeJesus was brought to the scene by Shelly and Pabon following an earlier altercation between Shelly and Mejia's sister, and that DeJesus was also accompanied by Chong, who also was armed. DeJesus points to no evidence on the record suggesting that any other person involved in the fight was armed, or that any person other than DeJesus or Chong shot Mejia or Lopez, both of whom suffered injuries from gun fire. The indictment charging DeJesus with second degree murder and first degree assault, the two crimes for which DeJesus was convicted, provided sufficient notice that he could face liability alternatively as a principal or as an accomplice of Chong.

The trial court's instructions on accomplice liability, even if referring generally to the acts of "any other person", cannot be deemed to have constructively amended the indictment in the light of the absence of any evidence that any person at the scene other than DeJesus and Chong was armed or acted in concert with DeJesus. The Court thus concludes that this claim has no merit.

## D. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

DeJesus claims that his appellate counsel was ineffective by failing to argue that the state failed to prove that DeJesus: (1) was not liable by reason of his justification defense; (2) was guilty beyond a reasonable doubt; (3) could be found guilty of depraved indifference murder under the acting in concert theory.

Claims of ineffective assistance of counsel are evaluated under the test enunciated by the Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *see also Evitts v. Lucey,* 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). The test requires a two-part a determination: (1) that counsel's performance was deficient, in that it fell below an objective standard of reasonableness measured by prevailing professional norms; and (2) a reasonable probability existed that but for counsel's deficient performance the outcome of the trial would have been different. *See Strickland,* 466 U.S. at 687–88, 694, 104 S.Ct. 2052. *Strickland* cautions, however, that in this assessment defense counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690, 104 S.Ct. 2052. In this connection, the Supreme Court has also recognized the substantial latitude appellate counsel must be accorded in the winnowing and selection of issues on which to focus an appeal.

*See Jones v. Barnes,* 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983).

■ Applying these standards, the Court is not persuaded that the performance of DeJesus's appellate counsel crossed that rigorous threshold. As an initial matter the Court notes, as the Report also pointed out, the issues that DeJesus faults appellate counsel for not having raised on appeal all entail challenges to the sufficiency of the trial evidence. In evaluating challenge to the sufficiency of the evidence, the Court must view the trial record in the light most favorable to the prosecutor and determine whether, based on reasoning and permissible inferences, a rational jury could find that the prosecution proved all the elements of the charged crime beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

Viewing the evidence summarized above in the light most favorable to the prosecution, the Court concludes that the record was sufficient to persuade a rational jury that the prosecution proved DeJesus guilty beyond a reasonable doubt. Accordingly, it could not be considered deficient assistance for appellate counsel not to raise on appeal weak or meritless arguments DeJesus now contends should have been presented, and for counsel to focus instead on other grounds that may have had more plausible legal basis.

DeJesus points out that a court in this District recently granted a habeas petition in *St. Helen v. Senkowski,* No. 02 Civ. 10248 (S.D.N.Y. Sep. 22, 2003) (Docket # 21), on finding constitutional deficiencies in the statute upon which DeJesus was convicted. The matter is now pending before the Court of Appeals for the Second Circuit (Docket No. 03–2777). The Court withholds consideration of the relevance of DeJesus's observation in this proceeding, or the implications of that case to his

petition, until a decision is rendered in *St. Helen* and the parties have had an opportunity to address what bearing, if any, a decision there may have on DeJesus's instant petition.

### III. *ORDER*

For the reasons discussed above, it is hereby

**ORDERED** that the petition of petitioner Alexander DeJesus for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is DENIED.

The Clerk of Court is directed to close this case.

As petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. 28 U.S.C. § 2253; *see Lozada v. United States,* 107 F.3d 1011 (2d Cir.1997), *abrogated on other grounds by United States v. Perez,* 129 F.3d 255, 259–60 (2d Cir.1997).

**SO ORDERED.**

### REPORT and RECOMMENDATION

FOX, United States Magistrate Judge.

### I. INTRODUCTION

Before the Court is the petition of Alexander DeJesus ("DeJesus") for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. DeJesus alleges that his confinement by the state of New York is unlawful because: 1) the trial court's supplemental jury instruction on the defense of justifiable use of physical force was erroneous and violated the petitioner's due process right to a fair trial; 2) the trial court's submission of an annotated verdict form to the jury violated the petitioner's due process right to a fair trial; 3) the trial court's jury instruction constructively amended the indictment to make the petitioner criminally liable for the conduct of an uncharged individual, and thereby violated DeJesus' due process right to a fair trial

and his right to notice of the charges against him; and 4) the assistance rendered by his appellate counsel was ineffective, and, therefore, DeJesus was denied due process of law and equal protection of the law.

The respondent opposes the petitioner's application for habeas corpus relief on the grounds that: 1) DeJesus' claims, other than his claim of ineffective assistance of appellate counsel, are unexhausted; and 2) all of the claims raised by DeJesus are without merit.

For the reasons set forth below, I recommend that the petition be denied.

### II. BACKGROUND

During the early morning hours of January 19, 1991, DeJesus was involved in an altercation at the corner of 162nd Street and Broadway, in Manhattan. At sometime earlier that morning, Jesenia Mejia and another woman identified in the trial record only as "Shelly" became engaged in an oral confrontation. Jesenia Mejia's brother, Antonio Mejia ("A. Mejia"), placed himself between the two women in order to prevent them from fighting. Shelly left and returned shortly thereafter with a group of men that included DeJesus and Charlie Chong ("Chong"). DeJesus was armed with a gun. This group confronted A. Mejia and a group of men with whom he had congregated. A fight ensued, during which DeJesus fired his gun several times, injuring Luis Lopez ("Lopez") and fatally injuring A. Mejia. Police officers who were in the vicinity apprehended DeJesus as he fled the scene. In a subsequent statement to police, DeJesus admitted that he had fired his gun. DeJesus explained that he had done so after noticing a man running toward him with his hand in his waistband, shouting "you, you, you."

A New York County grand jury returned an indictment charging DeJesus and Chong with: two counts of murder in the second degree (N.Y. Penal Law § 125.25[1], [2]) for causing the death of A. Mejia; two counts of assault in the first degree (N.Y. Penal Law § 120.10[1], [3]) for causing serious physical injury to Lopez; and one count of attempted murder in the second degree (N.Y. Penal Law §§ 110, 125.25[1]) for attempting to cause the death of Lopez.

DeJesus proceeded to trial before a jury in New York State Supreme Court, New York County. At the trial, DeJesus presented a defense, pursuant to New York Penal Law § 35.15(2), that his use of force was justified. At his request, the trial court instructed the jury about the defense of justification. However, the trial court did not include language proposed by the petitioner in its instructions to the jury. In addition to the instruction on the defense of justification, the trial court instructed the jury that DeJesus could be found liable for the acts of any person, if the prosecution proved that DeJesus had "solicited, requested, urged, commanded, or intentionally aided in any manner at all any other person to do an act which contributed to the commission of the crime or acts being done."

During its deliberations, the jury submitted two questions to the court seeking guidance. The questions concerned: (i) the issue of justification; and (ii) the definition of the phrase "initial aggressor." In response to each of these questions, the trial court gave the jury a supplemental instruction on the issue of justification. As part of its response to the latter question, the trial court instructed the jury that "[o]ne who knows he has placed him or herself in a situation in which deadly physical force is likely to take place, cannot say that his or her use of deadly physical force was justified."

The jury found DeJesus guilty on one count of murder in the second degree ("depraved indifference murder") and one count of assault in the first degree. Thereafter, he was sentenced to consecutive terms of 25 years to life imprisonment for the second degree murder conviction and seven and one-half to 15 years imprisonment for the assault conviction. The petitioner appealed from the judgment of conviction to the New York State Supreme Court, Appellate Division, First Department ("Appellate Division"). He urged that court to upset his conviction because: 1) the trial court, in its supplemental instruction to the jury, misstated the law concerning the defense of justification; 2) the trial court submitted an annotated verdict form to the jury without the petitioner's consent, in violation of the requirements of New York decisional law and New York Criminal Procedure Law ("NYCPL") § 310.30; 3) the trial court amended the indictment constructively and impermissibly by instructing the jury that DeJesus could be held liable for the acts of persons not mentioned in the indictment, thereby denying DeJesus sufficient notice of the charges against him; and 4) the trial court imposed an excessive sentence on DeJesus, given his criminal record, family ties, and employment history.

The Appellate Division affirmed the petitioner's conviction. *See People v. DeJesus,* 255 A.D.2d 256, 682 N.Y.S.2d 129 (1st Dep't 1998). Thereafter, DeJesus sought leave to appeal to the New York Court of Appeals. On March 8, 1999, the Honorable Carmen Beauchamp Ciparick, Associate Judge of the New York Court of Appeals, denied the petitioner's application for leave to appeal to that court.

On September 24, 1999, DeJesus filed a petition for a writ of habeas corpus. It was subsequently dismissed, without prejudice, at DeJesus' request, so that he

might present an unexhausted claim of ineffective assistance of appellate counsel to the state courts for adjudication. Thereafter, DeJesus petitioned the Appellate Division for a writ of error *coram nobis*. In that petition, DeJesus alleged, *inter alia*, that the failure of his appellate counsel to raise certain claims, through the appeal, violated DeJesus' federal constitutional rights to effective assistance of appellate counsel, due process, and equal protection of the law. On February 22, 2001, the Appellate Division denied the *coram nobis* petition.

DeJesus returned to this court with the instant petition for a writ of habeas corpus. The respondent alleged that the petition was not timely and should be dismissed. However, your Honor determined that equitable tolling of the applicable statute of limitations was appropriate, and, therefore, the petition was timely.

## III. DISCUSSION

*Supplemental Jury Charge; Annotated Verdict Form*

Before a habeas corpus petitioner may seek judicial relief in a federal court, he must have fairly presented the substance of his federal constitutional claims to the highest state court for adjudication. *See* 28 U.S.C. § 2254(b)(1)(A). Even without expressly alleging the violation of a specific constitutional provision, a petitioner may fairly present a federal constitutional claim to a state court by "(a) [relying] on pertinent federal cases employing [federal] constitutional analysis, (b) [relying] on state cases employing [federal] constitutional analysis in like fact situations, (c) [asserting] the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) [alleging] a pattern of facts that is well within the mainstream of [federal] constitutional litigation." *Daye v. Attorney General*, 696 F.2d 186, 194 (2d Cir.1982). In particular, "the petitioner must have placed before the state court essentially the same legal doctrine he asserts in his federal petition." *Id.* at 192.

In his appeal to the Appellate Division and subsequent application for leave to appeal to the New York Court of Appeals, DeJesus did not expressly raise any points of federal law in connection with his claims regarding the supplemental jury instruction concerning the defense of justification or the annotated verdict form.[1] Furthermore, DeJesus did not cite any state decisional law employing federal constitutional analysis, or otherwise present these claims to the state courts in a manner that would have alerted those courts that he was alleging violations of his federal due process right to a fair trial. Consequently, the Court finds that DeJesus failed to meet the obligation imposed on him in *Daye*; that is, he did not fairly present to the state courts as federal constitutional claims the two claims noted above. Therefore, these two claims are unexhausted. Moreover, the trial record provided sufficient facts to permit review of these claims by the Appellate Division on direct appeal. Therefore, DeJesus is now procedurally barred from challenging his conviction on these grounds in state court. *See* NYCPL § 440.10(2)(c).

■ Since DeJesus' claims regarding the supplemental jury instruction concerning the defense of justification and the annotated verdict form were procedurally

---

1. In his reply brief in support of his habeas corpus petition, DeJesus raises a number of points of federal law concerning the defense of justification and cites relevant federal case law. However, these points of law were not raised by DeJesus in the state courts. Moreover, the cases relied upon analyze federal criminal proceedings only, and have no application to the state court criminal proceeding in which DeJesus was involved.

defaulted in the state courts, in order to obtain federal habeas corpus review of these claims, DeJesus must show cause for his default and prejudice attributable thereto, or that this court's failure to consider his federal claims will result in a fundamental miscarriage of justice. *See Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 2564–65, 115 L.Ed.2d 640 (1991). A fundamental miscarriage of justice exists when a habeas corpus petitioner is actually innocent of the charge(s) for which he has been convicted. *See Bousley v. United States*, 523 U.S. 614, 623, 118 S.Ct. 1604, 1611, 140 L.Ed.2d 828 (1998). In the instant case, DeJesus has shown neither cause for his procedural default nor prejudice. Under these circumstances, the above-noted claims should not be entertained by the court.

*Constructive Amendment of Indictment*

In his state court appellate brief, DeJesus cites *Russell v. United States*, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962), which explains that one of the purposes of an indictment in a federal criminal prosecution is to protect the Sixth Amendment right of the accused to have notice of the charges against him sufficient to permit him to mount a defense, should he choose to do so. In the Appellate Division, the petitioner argued that the trial court's jury instruction regarding criminal liability for the acts of a person(s) not on trial altered the nature of the charges included in the indictment with the result that DeJesus received insufficient notice of the criminal charges against which he might have to defend and those that the jury would be permitted to consider. The Court finds that this argument, in combination with the citation to *Russell*, was sufficient to alert the Appellate Division that the petitioner was asserting a federal constitutional claim that he was denied his due process right to notice of the charges against him.

■ The Supreme Court has held that, pursuant to the Due Process Clause of the Fourteenth Amendment, a state criminal defendant is entitled to notice of the charges against him. *See Gray v. Netherland*, 518 U.S. 152, 154, 116 S.Ct. 2074, 2076, 135 L.Ed.2d 457 (1996) (citing *In re Ruffalo*, 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117 [1968]). Under New York law, "[t]here is no distinction between liability as a principal and criminal culpability as an accessory[,] and the status for which the defendant is convicted has no bearing upon the theory of the prosecution." *People v. Duncan*, 46 N.Y.2d 74, 79–80, 412 N.Y.S.2d 833, 837, 385 N.E.2d 572 (1978). As the trial court explained in its instructions to the jury, New York permits a defendant to be held criminally liable for an offense committed by another person only if the defendant, with the criminal intent required for that offense, "solicits, requests, commands, importunes, or intentionally aids such person to engage in such conduct." N.Y. Penal Law § 20.00.

By charging DeJesus with second degree murder and first degree assault, the state provided adequate notice that he might face evidence of culpability either as a principal or as an accomplice of Chong in the commission of those crimes. Although the trial court's instruction to the jury about accomplice liability referred to liability for the acts of "any other person" rather than merely for the acts of Chong, no evidence was presented at trial that anyone other than DeJesus or Chong shot Mejia or Lopez. Extensive and unrebutted trial evidence demonstrated that: 1) Mejia was killed and Lopez wounded by gunshot wounds; and 2) Chong and DeJesus were armed with guns during the fight. No evidence was presented that any other person at the fight was armed with a gun. Nor was any evidence presented that DeJesus had solicited, requested, commanded, importuned or intentional-

ly aided any other person to shoot Mejia or Lopez.

Given this evidentiary record, the trial court's generic instruction to the jury about accomplice liability could not have led the jury to find DeJesus criminally liable for the acts of any person(s) other than Chong. Accordingly, DeJesus was not denied notice of the criminal charges made against him that would be considered by the jury. Thus, he is not entitled to habeas corpus relief on this claim.

*Ineffective Assistance of Appellate Counsel*

The Sixth Amendment guarantees a criminal defendant the "right to effective assistance of counsel." *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984). This right to counsel also extends to the prosecution of a direct appeal from a judgment of conviction. *See Evitts v. Lucey,* 469 U.S. 387, 395–96, 105 S.Ct. 830, 836, 83 L.Ed.2d 821 (1985). To determine whether counsel's assistance was effective, the Supreme Court devised a two-part test. *See Strickland,* 466 U.S. at 687–696, 104 S.Ct. at 2064–2069. First, a criminal defendant must show that counsel's performance was deficient; that is, that it fell below an "objective standard of reasonableness" measured under "prevailing professional norms." *Id.* at 687–688, 104 S.Ct. at 2064–2065. Second, the criminal defendant must affirmatively demonstrate prejudice, by showing that "there is a reasonable probability that but for counsel's [error], the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068. *See also United States v. Javino,* 960 F.2d 1137, 1145 (2d Cir.), *cert. denied,* 506 U.S. 979, 113 S.Ct. 477, 121 L.Ed.2d 383 (1992). A reasonable probability has been defined as "a probability sufficient to undermine confidence in the outcome." *See Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068. Considerable deference is accorded counsel's performance as counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* 466 U.S. at 690, 104 S.Ct. at 2066.

Failure to present every nonfrivolous argument to the appellate court does not constitute ineffective assistance of counsel, since appellate counsel is permitted to exercise professional judgment when determining which issue(s) to pursue on appeal. *See Jones v. Barnes,* 463 U.S. 745, 751, 103 S.Ct. 3308, 3312, 77 L.Ed.2d 987 (1983). Indeed, the Supreme Court has recognized that effective appellate advocacy entails "winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Id.* at 751–52, 103 S.Ct. at 3312.

DeJesus claims that his appellate counsel was ineffective because counsel did not argue that the prosecution failed to: a) disprove the petitioner's defense of justification; b) establish petitioner's guilt beyond a reasonable doubt; and c) establish petitioner's guilt for the crime of depraved indifference murder under the theory of acting in concert with one or more other persons. Each of these proposed appellate arguments would have required challenging the sufficiency of the evidence presented at trial by the prosecution. When reviewing the sufficiency of the evidence, New York appellate courts view the evidence "in a light most favorable to the People[,] to determine whether there is a valid line of reasoning and permissible inferences from which a rational jury could have found the elements of the crime proved beyond a reasonable doubt." *See People v. Steinberg,* 79 N.Y.2d 673, 681–82, 584 N.Y.S.2d 770, 773, 595 N.E.2d 845 (1992).

In view of the difficulty of meeting of this legal standard and in view of the record evidence supporting the jury's ver-

dict, the petitioner's appellate counsel was not objectively unreasonable in "winnowing out" these claims in favor of those presented in the petitioner's appellate brief. Moreover, it is not likely that the outcome of the appellate proceedings would have been different had counsel raised the issues petitioner proposes in lieu of those actually raised. For example, appellate counsel exercised reasonable professional judgment in electing to challenge the trial court's supplemental instruction to the jury about justification. The trial court instructed the jury that a person cannot be justified in using deadly physical force if he has placed himself "in a situation in which deadly physical force is likely to take place." Appellate counsel raised a colorable claim that this instruction was too broad and effectively directed the jury to refrain from considering DeJesus' defense of justification. Since the jury asked multiple questions on the subject of justification, appellate counsel could have concluded reasonably that, based on the record evidence, he could establish clearly that an erroneous instruction about justification had been given by the trial court and that it prejudiced DeJesus. This was a reasonable and appropriate exercise of professional judgment. In like manner, DeJesus' appellate counsel could have concluded reasonably that, based on the trial record, the likelihood of persuading an appellate court that the prosecution offered insufficient evidence to support the underlying criminal charges or to rebut the defense of justification was not great, and, thus, it was prudent not to make those arguments.

Accordingly, the Court finds that the petitioner's claim, that the assistance he received from his appellate counsel was ineffective and, therefore, violated his constitutional rights, is without merit.

## IV. RECOMMENDATION

For the reasons set forth above, the petitioner's application for a writ of habeas corpus should be denied.

## V. FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Victor Marrero, 40 Centre Street, Room 414, New York, New York, 10007, and to the chambers of the undersigned, 40 Foley Square, Room 540, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Marrero. FAILURE TO FILE OBJECTIONS WITHIN TEN (10) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.1992); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237–38 (2d Cir.1983).

May 10, 2004.