**UNITED STATES of America,
Appellee,**

v.

**Frank COTRONI and Frank
Dasti, Appellants.**

**Nos. 1179, 1180, Dockets 75–1118,
75–1156.**

United States Court of Appeals,
Second Circuit.

Argued Aug. 13, 1975.

Decided Dec. 22, 1975.

John Nicholas Iannuzzi, New York City (Henry J. Boitel, New York City, of counsel), for appellant Frank Cotroni.

Michael N. Klar, Mineola (Henry J. Boitel, New York City, of counsel), for appellant Frank Dasti.

David G. Trager, U. S. Atty., E.D.N.Y. (Edward R. Korman, Chief Asst. U. S. Atty., of counsel), for appellee.

Before GURFEIN, VAN GRAAFEILAND and MESKILL, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

In this saga of international crime, we are met once again with the contention that evidence obtained by foreign authorities in a manner which does not comport with our country's constitutional and statutory requirements should be excluded. The evidence here came from Canadian wiretaps placed by that country's police without judicial authorization such as is required by Title III of the Omnibus Crime Control Act of 1968. 18 U.S.C. § 2510 *et seq.* We agree with the trial court that the evidence was admissible, and we affirm the judgments appealed from.

Frank Cotroni and Frank Dasti, Canadian citizens, were convicted after a jury trial in the Eastern District of New York of conspiracy to import cocaine into the United States for the purpose of sale[1] and also for receiving, concealing and facilitating the transportation and concealment of nine kilograms of cocaine.[2] The cocaine originated in Mexico and ended up in the hands of the notorious Bynum drug ring in New York City. *See United States v. Bynum,* 485 F.2d 490, 493–94 (2d Cir. 1973), *vacated and remanded,* 417 U.S. 903, 94 S.Ct. 2598, 41 L.Ed.2d 209 (1974), *rehearing on remand,* 386 F.Supp. 449 (S.D.N.Y.1974), *aff'd,* 513 F.2d 533 (2d Cir. 1975).

Much of the evidence leading to appellants' convictions came from the testimony of co-conspirators, buttressed by hotel and airline records and police surveillance reports. However, important corroborative proof was also provided by summaries and transcripts of thirty-two wiretaps furnished the prosecution by Canadian police. Canadian wiretapping had commenced in July 1970 as part of a general gambling investigation, and taps were placed at both the homes and the social club of appellants. During the three-year period that this investigation was in progress, thousands of conversations were intercepted. Those involving the drug conspiracy of appellants were secured in December 1970 and January 1971. Appellants contend that this was done in violation of the laws of both the United States and Canada. Following a suppression hearing, the District Court rejected this contention.

Chief Judge Mishler found that, prior to the enactment of the Canadian Protection of Privacy Act[3] in 1974, no law of that country outlawed wiretapping. The statutes in existence in 1970 and 1971[4] were intended to protect telephone service and equipment not to prevent the interception of communications in connection with a lawful police investigation. Chief Judge Mishler also held that the Protection of Privacy Act, which contained an exclusionary rule[5] similar

---

1. 21 U.S.C. §§ 173, 174 (1964). Repealed by Act of October 27, 1970, P.L. 91–513, Title III, § 1101(a)(2), (4), 84 Stat. 1291. The repealer does not affect this case because the crime occurred prior thereto.

2. 21 U.S.C. §§ 173, 174 (1964) (repealed, *see* note 1 *supra*) and 18 U.S.C. § 2.

3. Martin's Criminal Code §§ 178.1–178.23 (1974).

4. An Act to Incorporate the Bell Telephone Company of Canada § 25 (Statutes of Canada, 1880, Ch. 67), Martin's Criminal Code § 287; The Quebec Telegraph and Telephone Companies Act § 24 (Revised Statutes of Quebec, 1964, Ch. 286).

5. Martin's Criminal Code § 178.16 (1974).

to that of Title III, did not apply retroactively. Chief Mishler's findings had ample support in the decisions of the Canadian courts.[6] Indeed the correctness of such findings has since been confirmed in Canada in an action brought by the wife of appellant Dasti involving the same wiretaps at issue herein.[7]

■ The District Judge also held that, although the intercepted telephone conversations traveled in part over our country's communication system, their introduction into evidence was not proscribed by Title III. In so doing, he relied largely on our decision in *United States v. Toscanino*, 500 F.2d 267, 279 (2d Cir. 1974), where we said that "the federal statute governing wiretapping and eavesdropping, 18 U.S.C. § 2510, et seq., has no application outside of the United States." Appellants would distinguish *Toscanino* because of the partial use in the instant case of United States communication facilities, relying for this argument on the definition of "wire communication" contained in 18 U.S.C. § 2510(1).[8] We think this reliance is misplaced. Congress sought by Title III to regulate interceptions, not wire communications. *See* Act of June 19, 1968, P.L. 90–351, § 801(a)–(d), 82 Stat. 211. Thus, it is not the route followed by foreign communications which determines the application of Title III; it is where the interception took place. Section 2511 prohibits the willful interception of communications and the willful disclosure of the contents of communications wrongfully intercepted. The former triggers

the latter and forms the entire basis for the evidentiary rule of exclusion found in 18 U.S.C. § 2515.

■ Our holding in *Toscanino* comports with the canon of construction which teaches that, unless a contrary intent appears, federal statutes apply only within the territorial jurisdiction of the United States. *Foley Brothers v. Filardo*, 336 U.S. 281, 285, 69 S.Ct. 575, 93 L.Ed. 680 (1949); *Air-Line Stewards and Stewardesses Association International v. Trans World Airlines, Inc.*, 273 F.2d 69, 70 (2d Cir. 1959) (per curiam), *cert. denied*, 362 U.S. 988, 80 S.Ct. 1075, 4 L.Ed.2d 1021 (1960).[9]

■ Appellants' arguments for exclusion receive no greater support from the United States Constitution. Appellants' rights vis-a-vis their own government are not defined by the provisions of the United States Constitution and are therefore "no legal concern of an American court." *Wentz v. United States*, 244 F.2d 172, 176 (9th Cir.), *cert. denied*, 355 U.S. 806, 78 S.Ct. 49, 2 L.Ed.2d 50 (1957). Accordingly, information furnished American officials by foreign police need not be excluded simply because the procedures followed in securing it did not fully comply with our nation's constitutional requirements. The absence of *Miranda* warnings may be overlooked, *United States v. Welch*, 455 F.2d 211 (2d Cir. 1972) (per curiam); *United States v. Nagelberg*, 434 F.2d 585, 587 n. 1 (2d Cir. 1970), *cert. denied*, 401 U.S. 939, 91 S.Ct. 935, 28 L.Ed.2d 219 (1971), and the lack

---

**6.** *Re Copeland and Adamson*, (1972) 7 C.C.C. (2d) 393, 399–400 (Ontario High Court of Justice); *Regina v. Demeter*, (1975) 19 C.C.C. (2d) 321 (Ontario High Court of Justice); *Regina v. Desjardins*, No. 74–9150, The Queen's Court (Criminal Division) Quebec, October 18, 1974.

**7.** *Dasti v. Patenaude*, Court for Sessions of the Peace, Quebec, December 23, 1974, *petition for mandamus denied sub nom. Dasti v. Durlanleau*, Superior Court (Criminal Division) Quebec, March 27, 1975.

**8.** 18 U.S.C. § 2510(1) provides:

"wire communication" means any communication made in whole or in part through the

use of facilities for the transmission of communications by the aid of wire, cable, or other like connection between the point of origin and the point of reception furnished or operated by any person engaged as a common carrier in providing or operating such facilities for the transmission of interstate or foreign communications . . . .

**9.** In *Toscanino*, 500 F.2d at 279–80, we pointed out that 18 U.S.C. § 2518 "significantly makes no provision for obtaining authorizations for a wiretap in a foreign country."

of a proper search warrant may be disregarded. *Birdsell v. United States*, 346 F.2d 775, 782 (5th Cir.), *cert. denied*, 382 U.S. 963, 86 S.Ct. 449, 15 L.Ed.2d 366 (1965); *Stonehill v. United States*, 405 F.2d 738 (9th Cir. 1968), *cert. denied*, 395 U.S. 960, 89 S.Ct. 2102, 23 L.Ed.2d 747 (1969); *Brulay v. United States*, 383 F.2d 345, 347–48 (9th Cir.), *cert. denied*, 389 U.S. 986, 88 S.Ct. 469, 19 L.Ed.2d 478 (1967). The exclusionary rule is intended to inculcate a respect for the Constitution in the police of our own nation. *Elkins v. United States*, 364 U.S. 206, 217, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960). Since it has little if any deterrent effect upon foreign police, *see United States v. Welch, supra*, 455 F.2d at 213, it is seldom used to bar their work product.[10]

We need not concern ourselves with taint which might have resulted from American participation in the Canadian taps. *See Stonehill v. United States, supra.* Chief Judge Mishler found that the United States government did not "in any way initiate, supervise, control or direct the wiretapping," and this finding has support in the evidence.

■ Appellants' remaining complaints about the wiretap evidence merit but passing comment. The failure of the Canadian police to keep complete transcripts of the thousands of conversations recorded over a three-year period did not require the exclusion of the thirty-two which were offered in evidence. The Canadian taps were being used to gather information about gambling; and, as the District Court found, the Canadian officials, in good faith, discarded those tapes which were non-informative. *See United States v. Augello*, 451 F.2d 1167, 1170 (2d Cir. 1971), *cert. denied*, 405 U.S. 1070, 92 S.Ct. 1518, 31 L.Ed.2d 802 (1972). Appellants have made no showing that those which were destroyed were relevant to the drug conspiracy herein involved or contained any exculpatory material. Moreover, appellants have come forth with no valid reason for charging the prosecution with the acts of the Canadian authorities. An adverse inference may not be drawn from the destruction of evidence without some showing of control. *Imperial Commodities Corp. v. Grace Line, Inc.*, 517 F.2d 404, 409 (2d Cir. 1975).

■ We likewise see no error resulting from appellants' inability to review the wiretap recordings still in the possession of Canadian police. The prosecution cannot be charged with wrongdoing for failure to permit inspection of recorded statements not "within the possession, custody or control of the government." Fed.R.Crim.P. 16(a)(1)(A); *United States v. Atkinson*, 512 F.2d 1235, 1239 (4th Cir. 1975); *United States v. Birrell*, 276 F.Supp. 798, 824 (S.D.N.Y.1967); *United States v. Kaskel*, 18 F.R.D. 477, 481 (E.D. N.Y.1956).

■ Judge Mishler's refusal to go to Canada and review the records accumulated during three years of wiretapping, none of which was subject to his jurisdiction or control, was not erroneous. There must be some limit to what can be demanded of our conscientious District Court judges in the expeditious handling of criminal trials which our laws demand. Appellants have made no showing that Judge Mishler's inspection would have been fruitful, and we see no abuse of discretion.

■ We do not understand why the Government felt it necessary to introduce tapes of conversations between appellant Dasti and his wife, since they added little, if anything, to the substantial evidence of guilt otherwise before the jury. This "last nail in the coffin" type of testimony often brings disaster to the overly-thorough advocate. However, we find that in this case the conversations were innocuous and harmless.[11] We therefore do not reach

---

**10.** Were the conduct of foreign police so reprehensible as to shock the conscience, a different result might obtain. *United States v. Nagelberg, supra*, 434 F.2d at 587 n. 1.

**11.** Of the twenty-four conversations introduced at trial to which Dasti was a party, only four involved his wife. In the first, Dasti tells his wife to pack her bags for a trip to New

the question of whether they were admissible because of their routine, nonconfidential nature, *United States v. Mitchell*, 137 F.2d 1006, 1009 (2d Cir. 1943), or because both spouses were participants in patently illegal activity. *United States v. Kahn*, 471 F.2d 191, 194 (7th Cir. 1972), *cert. denied*, 411 U.S. 986, 93 S.Ct. 2271, 36 L.Ed.2d 964 (1973).

Appellants' only claim of error unrelated to the wiretaps concerns the proof offered by the government to link appellants' narcotics dealings with those of the Bynum ring. The Assistant United States Attorney who prosecuted did not learn of this connection until shortly before the commencement of trial. In view of the District Court's consequent offers of adjournment to appellants, we see no error resulting from this delayed enlargement of the scope of the alleged conspiracy. *United States v. Salazar*, 485 F.2d 1272 (2d Cir. 1973), *cert. denied*, 415 U.S. 985, 94 S.Ct. 1579, 39 L.Ed.2d 882 (1974).

Testimony that Bynum was using the cocaine purchases as a forerunner to subsequent dealings in heroin, admitted without objection, did not warrant the granting of appellants' subsequent motion for mistrial. The court instructed the jury that this testimony was admitted only on the issue as to whether appellants entered into the conspiracy for the cocaine, as charged in the indictment, knowingly and willfully and that, if the jury didn't think it was pertinent on that issue, it should disregard it. We see no prejudicial abuse of discretion in its admission. *United States v. Braverman*, 376 F.2d 249, 252 (2d Cir.), *cert. denied*, 389 U.S. 885, 88 S.Ct. 155, 19 L.Ed.2d 182 (1967).

After full consideration of all of appellants' contentions, we see no error. The judgments of conviction are affirmed.

York City. In the others, reference is made to the arrival of "the Americans" with money.

These material facts were disclosed by other, clearly admissible evidence.