**UNITED STATES of America**

v.

**Placido ANGULO–HURTADO**

**No. CR. A. 100CR357JOF.**

United States District Court,
N.D. Georgia,
Atlanta Division.

May 14, 2001.

Report and Recommendation adopted as an order of the District Court Aug. 20, 2001.

Moore, John Cuthbert, Raul Porto and Mercedes Porto [178, 182, 184, 186, 190], to suppress all information garnered by the Government as the result of electronic surveillance.

The undersigned held a hearing on the above-referenced motions on May 7, 2001, at which counsel for Defendants and for the Government were heard on the issue of whether Defendants are entitled to a full evidentiary hearing on these motions. For the reasons detailed herein, the Court concludes that Defendants are not entitled to an evidentiary hearing. Further, having examined the record and briefs in light of the arguments heard at the May 7 hearing, the Court finds that Defendants have not alleged any statutory or constitutional violation that, even if proven, would require suppression of the fruits of the challenged wiretaps. Accordingly, the Court **RECOMMENDS** that the motions to suppress be **DENIED**.

### FACTUAL BACKGROUND

On February 3, 2000, Special Agent Gregory Cherundolo of the U.S. Drug Enforcement Administration swore out an affidavit in support of his application for interception of wire communications over telephone number (678) 523–3009 (the "target telephone"), pursuant to 18 U.S.C. § 2510 *et seq.* ("Title III"). In the affidavit, Agent Cherundolo alleged that the target telephone was being used by Defendant Angulo–Hurtado, a/k/a Salomon Hargrove, in furtherance of a conspiracy involving the transportation of drugs and drug money from Colombia into the United States. As part of his factual narrative in support of the wiretap application, Agent Cherundolo made reference to two telephone calls intercepted by a wiretap operated by the Colombian Department of

Angela Marie Jordan, Office of U.S. Atty., Atlanta, GA, for U.S.

Robert H. Citronberg, Office of Robert H. Citronberg, Atlanta, GA, for Defendant.

### REPORT AND RECOMMENDATION ■

HAGY, United States Magistrate Judge.

Defendants are charged in a multi-count indictment that alleges that they were involved in a conspiracy to distribute narcotics in violation of 21 U.S.C. § 846, which also involved the fraudulent procurement of United States citizenship documents in violation of 18 U.S.C. §§ 2 and 1425. This matter is before the undersigned on the motion of Defendant Letisha Leshun Moore [181, 198], joined by Defendants Placido Angulo–Hurtado, Lawrence

Administrative Security ("DAS") during November of 1999, which were believed to have been placed to the target telephone.

Cherundolo presented the affidavit, and an accompanying application executed under oath by Assistant United States Attorney Angela M. Dannelly, to United States District Judge Clarence Cooper of the Northern District of Georgia on February 3, 2000. Judge Cooper granted the application allowing the Government to proceed with the interception (hereinafter, "the United States wiretap"). Certain telephone calls intercepted under the authority of Judge Cooper's order provided information that the Government intends to use in its prosecution of Defendants.

Defendants seek to suppress any conversations, or other evidence obtained as a result of the United States wiretap, on the ground that Agent Cherundolo's warrant application was based on information gleaned from an illegal wiretap conducted by agents of the Colombian government. Defendants contend that the Colombian telephone tap was unlawful because it did not comport with the Fourth and Fifth Amendments to the United States Constitution or with Title III. While conceding that United States law generally is inapplicable to purely foreign law enforcement operations, Defendants argue that this surveillance was a joint venture directed by United States authorities, and as such should have been conducted in accord with United States law. Further, Defendants contend that Agent Cherundolo knowingly, or at least recklessly, included materially false information in his Title III application by stating in his supporting affidavit that the Colombian wiretap was "legal." If this "tainted" information were redact-ed, Defendants argue, the remaining information would not provide sufficient basis for a court to grant a Title III wiretap application. Accordingly, they contend that any evidence garnered as a result of the United States wiretap should not be admitted against them.

## DISCUSSION

■ A court's wiretap order issued pursuant to Title III enjoys a presumption of validity. *United States v. Weber*, 808 F.2d 1422, 1423 (11th Cir.1987); *United States v. Green* 175 F.3d 822, 828 (10th Cir.1999). A defendant challenging a duly authorized wiretap on the grounds of a flawed affidavit must make a "substantial preliminary showing" to be entitled to an evidentiary hearing on his challenge, and this required showing is "not lightly met." *United States v. Milton,* 153 F.3d 891, 896 (8th Cir.1998).

Defendants' challenge to the United States wiretap is based on their contention that the Colombian wiretap, which supplied some of the information used to support Agent Cherundolo's Title III application, was unlawful. Their attack consists of two closely related but legally distinct arguments: (1) that, to the extent that evidence found subsequent to the Colombia wiretap was based on that purportedly illegal wiretap, such evidence must be suppressed as "fruit of the poisonous tree," [1] and (2) that Agent Cherundolo included materially false information in his affidavit as to the legality of the Colombian telephone tap, thus tainting the Title III application under the doctrine of *Franks v. Delaware*. [2] The first inquiry, thus, must be whether Defendants have set forth any

---

1. *See, e.g., United States v. Pruitt,* 174 F.3d 1215, 1219 (11th Cir.1999), *citing Wong Sun v. United States,* 371 U.S. 471, 488, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) ("evidence which constitutes the 'fruit of a poisonous tree' is inadmissable to prove a criminal suspect's guilt.").

2. 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978)

grounds upon which the Court could find that the Colombian wiretaps were illegal. If not, it follows that the Court could not find Agent Cherundolo's affidavit to be materially false on the basis that he called the wiretaps "legal." It further follows that Defendants' "fruit of the poisonous tree" claims would be groundless; if the wiretaps were legal, then the tree simply was not poisonous.

Agent Cherundolo's affidavit states that the Colombia wiretap was signed by an authorized individual as provided by Colombian law. *See* Govt. Ex. 1, Affidavit of Agent Gregory Cherundolo, at 5 (hereinafter, "Aff."). Defendants do not argue that the Colombian telephone tap was in violation of local law, but rather, that it was conducted in violation of the more stringent standards of Title III or, alternatively, of the United States Constitution.[3] Thus, the question becomes whether either United States statutory or constitutional standards should be applied to the Colombian wiretap.

### A. *Applicability of Title III*

Title III, enacted by Congress as part of the Omnibus Crime Control and Safe Streets Act of 1968,[4] establishes a rigorous regime that the Government must follow to intercept the contents of any wire or oral communications. As with a search warrant, the issuance of a wiretap order requires that a judge find sufficient facts to support a finding of probable cause to believe that an offense is being committed, has been committed or is about to be committed. 18 U.S.C. § 2518(1)(b).

To obtain an order authorizing a wiretap, a federal agent must set forth not only information about the suspected offense and the evidence sought, but also a detailed statement as to whether alternative investigative techniques have been tried or, if not, why those alternatives would be futile or unreasonably dangerous. 18 U.S.C. § 2518(1)(c). Further, an application for a Title III wiretap order must be approved at the highest levels of the Justice Department under 18 U.S.C. § 2516, which ensures an additional layer of scrutiny and accountability. If wiretap information is gathered in violation of the safeguards of Title III, any aggrieved person may move to suppress the contents of any intercepted communication, or evidence derived therefrom, sought to be used against him or her in any state or federal proceeding. 18 U.S.C. § 2518(10)(a).

While Defendants have not made any allegation as to how the procedures for obtaining wiretaps under Colombian law fall short of the safeguards provided in Title III, the Government does not attempt to argue that the Colombian approval process is equivalent to Title III. At oral argument, the Government acknowledged that the Colombian wiretaps were not subjected to the approval regime of Title III, a point implicit in Agent Cherundolo's affidavit. *See* Aff. at 5 ("I am not aware of any other applications that have been made to any federal court in the United States of America for authorization to intercept wire, oral, or electronic communications involving any of the same persons, facilities, or places specified in this application."). Thus, if the Court were to conclude that Title III applied to the Colombian wiretap, there is no serious dispute that such wiretap would have been illegal.

---

**3.** Indeed, even a finding that the wiretap was carried out in contravention of Colombian law would not dictate that any evidence derived from such illegal wiretap must be suppressed. *See United States v. Barona,* 56 F.3d 1087, 1091 (9th Cir.1995) ("Even where no authorization for a foreign wiretap was se- cured in violation of the foreign law itself, we have not excluded the evidence under this rationale... nor should we.").

**4.** Pub.L. No. 90–351, 82 Stat. 212 (codified as amended at 18 U.S.C. §§ 2510–20).

■ That being said, Defendants have cited no authority, and the Court is aware of none, standing for the proposition that Title III applies to wiretaps conducted by foreign agencies. Although this Circuit has not directly confronted the issue, the Second Circuit has decided that Title III has no extraterritorial application even where United States law enforcement officers are *directly involved* in procuring the foreign wiretap. *See United States v. Toscanino*, 500 F.2d 267, 279–80 (2nd Cir. 1974) (finding that Title III "significantly makes no provision for obtaining authorization for a wiretap in a foreign country")[5]; *see also United States v. Cotroni*, 527 F.2d 708, 711 (2nd Cir.1975) (extending *Toscanino* to apply even where intercepted telephone call traveled partially over United States communication channels); *United States v. Peterson*, 812 F.2d 486, 492 (9th Cir.1987) (following *Cotroni*, "Title III has no extraterritorial application."). As the Second Circuit noted in *Cotroni*, it is a well-accepted canon of statutory construction that, unless a contrary intent appears, United States statutes are to apply only within the territorial jurisdiction of the United States. *Id.,citing Foley Brothers v. Filardo*, 336 U.S. 281, 285, 69 S.Ct. 575, 577, 93 L.Ed. 680 (1949); *see also Sale v. Haitian Ctrs. Council, Inc.*, 509 U.S. 155, 188, 113 S.Ct. 2549, 125 L.Ed.2d 128 (1993) ("Acts of Congress normally do not have extraterritorial application unless such an intent is clearly manifested.").

■ Defendants having presented no argument or authority to the contrary, this Court is persuaded by the rationale of *Toscanino* and *Cotroni*. As these cases explain, Congress intended Title III to protect the integrity of United States communications systems against unauthorized interceptions taking place in the United States. If Congress had meant to require law enforcement agencies to satisfy Title III for interceptions conducted outside the United States, it would have provided some mechanism by which agents could obtain such approval. Congress did not do so. Therefore, even if United States participation in the Colombia wiretap were so extensive that the wiretap must be viewed as an operation of the United States (rather than Colombian) Government, which is by no means clear, Defendants have provided no basis upon which the Court could conclude that Title III standards applied. Accordingly, to the extent that Defendants' "fruit of the poisonous tree" argument rests on the purported illegality of the Colombian wiretap under Title III, that contention has no merit.

## B. Applicability of United States Constitution[6]

■ The Fourth Amendment provides:

---

**5.** Specifically, 18 U.S.C. § 2518(3) empowers a judge to issue an order authorizing interception of communications "within the territorial jurisdiction of the court in which the judge is sitting (and outside that jurisdiction *but within the United States* in the case of a mobile interception device authorized by a Federal court within such jurisdiction)" (emphasis added).

**6.** In her brief in support of the motion to suppress, Defendant Letisha Moore suggests that the Colombian wiretap operation may have violated both the Fourth and Fifth Amendments to the United States Constitution. While it is well established that a wiretap is a "search" that implicates Fourth Amendment protections, *see, e.g., Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), Defendant has pointed to no authority under which the Court could find a Fifth Amendment violation under the facts at hand here.

More to the point, to the extent that Defendants argue for extraterritorial application of the United States Constitution on the grounds that the Colombian wiretap was effectively a joint venture with the United States, that doctrine is solely a creature of the Fourth Amendment. *United States v. Barona*, 56 F.3d 1087,

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or places to be seized.

U.S. CONST. amend. IV. Defendants argue that, even if the Colombian wiretap that was referenced in Agent Cherundolo's affidavit did not require approval under the statutory regime of Title III, it still may have been unlawful if it violated the United States Constitution. This argument is unavailing for two reasons: first, because Defendants have provided no basis upon which the Court could conclude that United States constitutional safeguards applied to this foreign wiretap, and second and more importantly, because Defendants have not even made a bare-bones allegation as to what conduct of the Colombian government is said to have violated their rights.

■ As Defendants recognize, the United States Constitution does not normally apply to operations conducted by foreign governments in the enforcement of foreign law, even if the evidence gathered in such operations is used in United States legal proceedings. *See United States v. Hawkins*, 661 F.2d 436, 455–56 (5th Cir.

Unit B 1981) (Fourth Amendment exclusionary rule did not apply to fruits of Panamanian officers' search of drug plane that crashed in Panama, even though American agents alerted Panamanian authorities to crash); *see also United States v. Morrow*, 537 F.2d 120, 139 (5th Cir. 1976). There are, however, two well-recognized exceptions in which United States constitutional standards do apply to searches on foreign soil: first, if it is shown that United States law enforcement agents "substantially" participated in the challenged search, or that they controlled the operation so that foreign law enforcement officials were acting as American agents (sometimes called the "joint venture" exception), and second, if the foreign officers' conduct is so egregious that it "shocks the conscience" of the American court. *United States v. Rosenthal*, 793 F.2d 1214, 1230–31 (11th Cir.1986).[7]

■ Defendants allege that United States authorities participated in the Colombian search to such a substantial degree as to convert the Colombian wiretap into an American operation requiring full compliance with the Fourth and Fifth Amendments. In support of this contention, Defendants point to: (1) a statement in Agent Cherundolo's affidavit that the drug investigation for which the wiretap was needed was being conducted "in con-

---

1093 (9th Cir.1995). Therefore, the Court's remaining discussion will focus on the applicability of the Fourth Amendment to the Colombian wiretap.

7. In their briefs, Defendants alleged that the "shocks the conscience" exception might apply because Colombian authorities erased their tapes of the intercepted conversations, a fact that the Government does not dispute. Defendants all but abandoned this line of reasoning during the hearing before the undersigned, however, and concentrated instead on the "joint venture" argument. Even if Defendants were to advance the argument that Co-

lombia's conduct was so shocking as to invalidate the search, the law is clear that far more appalling abuses, such as torture, must be shown to satisfy this narrow exception. *See United States v. Mitro*, 880 F.2d 1480, 1483–84 (1st Cir.1989) (conduct of foreign government in refusing to allow defendant to inspect wiretap application and affidavit did not shock the conscience so as to require exclusion; to invoke "very limited" exception, defendant must show not only violation of his due process rights but of "fundamental international norms of decency") (citation omitted). Therefore, the Court will focus only on Defendants' "joint venture" theory.

junction with" the Colombian Department of Administrative Security (DAS); and (2) a collection of news articles, attached to Defendant Letisha Leshun Moore's brief, documenting the extensive role of the United States in Colombia's drug eradication efforts. This information is simply insufficient to establish a joint venture for purposes of imposing United States constitutional standards on the Colombian wiretap. As the Government pointed out during the hearing, the fact that Agent Cherundolo stated in February of 2000 that the operation was being conducted in conjunction with the DAS does not mean that the agencies were working together in November of 1999 when Colombian drug agents conducted their wiretap. The newspaper articles, to the extent that they may constitute admissible evidence at all, indicate only that there is a general pattern of joint drug investigations between the two countries, not that this particular wiretap was one of them.

The "joint venture" doctrine is a purposefully limited exception, and this Circuit accordingly has set a high threshold for a defendant to invoke it. For instance, in *United States v. Behety*, the Eleventh Circuit held that the Fourth Amendment's exclusionary rule did not apply to a search of an American drug boat by Guatemalan agents that was the result of a tip from United States DEA authorities, even though DEA agents were present during the search and videotaped it. 32 F.3d 503, 511 (11th Cir.1994). Similarly, in *Rosenthal*, the Eleventh Circuit upheld the district court's finding that the joint venture doctrine was inapplicable to a search of the defendant's residence by Colombian police, even though United States drug agents were briefed on the Colombian agency's

plans a day in advance and were present when the search was carried out. 793 F.2d at 1231.[8] Defendants here have made no allegation that United States officials were involved in conducting this wiretap, as opposed to being involved generally in this and other Colombian drug investigations. To the contrary, Agent Cherundolo swore in his affidavit that "the investigation in Colombia is not controlled by investigators in the United States," and indeed, relied on the Colombian government's failure to carry out sufficiently thorough surveillance as support for why the DEA needed its own wiretap. *See* Aff. at ¶ 37(a). Therefore, accepting everything Defendants have alleged as true, the Court would still find that the participation alleged on the part of the United States would not rise to a sufficient level to satisfy the joint venture test.

■ Even if the Court were to find the joint venture exception applicable, this would establish only that the Colombia wiretap was subject to United States constitutional standards. It would not establish the ultimate fact that Defendants' constitutional rights were, in fact, violated. This is the fatal omission in Defendants' arguments. Nowhere in their briefs, or in the hearing before this Court, did Defendants allege any actual violation. The sole such reference is a statement in the brief of Defendant Letisha Leshun Moore: "At this time, the government in this case has failed to demonstrate the seizures of information by the Colombian government were reasonable. Likewise the government has failed to demonstrate that the seizures were conducted upon a showing (of) probable cause." Def. Letisha Moore's Brf. at ¶ 15.

---

**8.** *See also United States v. Maturo*, 982 F.2d 57 (2nd Cir.1992) (finding no joint venture in Turkish wiretap of American citizen, even though United States authorities tipped off Turkish police to defendant's suspected drug smuggling activities and reviewed audio tapes of Turkish police wiretap).

Simply posing a question as to the constitutionality of the search is a far cry from alleging that Defendants' rights actually were violated. Defendants have provided nothing to indicate that the Colombian telephone tap was conducted in contravention of their Fourth Amendment rights; their argument appears to rest solely on the intimation that *any* surveillance operation carried out by the Colombian government must, as a matter of course, fall short when measured by United States constitutional standards. Such a conclusory assertion is inadequate to carry their burden. *See Nardone v. United States*, 308 U.S. 338, 341, 60 S.Ct. 266, 268, 84 L.Ed. 307 (1939) ("The burden is, of course, on the accused in the first instance to prove to the trial court's satisfaction that wire-tapping was unlawfully employed."); *United States v. Garcia*, 785 F.2d 214, 222 (8th Cir.1986) ("those against whom the resulting evidence is admitted have the burden of proving the wiretapping was unlawfully obtained or used.").[9]

Because Defendants have not made a sufficient showing that the Fourth Amendment to the United States Constitution should apply to the manner in which the Colombian DAS conducted its wiretap, or that Colombian agents committed any substantive violation of these constitutional rights, the Colombian wiretap is not "tainted" so as to contaminate other evidence derived from it. Accordingly, Defendants' "fruit of the poisonous tree" claim fails. *See Waldrop v. Thigpen*, 857 F.Supp. 872, 897 n. 13 (N.D.Ala.1994), *citing Martin v. Wainwright*, 770 F.2d 918, 928 (11th Cir. 1985) ("(Defendant's) statement was not inadmissible under the 'fruit of the poisonous tree' theory because this theory applies only when a constitutional violation has occurred.").[10] The Court thus turns to the related matter of whether Agent Cherundolo's affidavit was defective under *Franks* for its inclusion of allegedly false averments.

9. As courts have long held, "the touchstone of the Fourth Amendment is reasonableness." *United States v. Purcell*, 236 F.3d 1274, 1278 (11th Cir.2001), *citing Ohio v. Robinette*, 519 U.S. 33, 39, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996). Therefore, to show that the Colombia wiretap was carried out in violation of their Fourth Amendment rights, Defendants would have to have alleged that the Colombian DAS did not act reasonably, in view of the totality of the circumstances, in conducting its surveillance.

10. The arguments and supporting case law set forth in Defendant Cuthbert's motion on this point are not helpful to Defendants' case. First, Defendant Cuthbert argues that "a wiretap order cannot be issued *solely* on illegally obtained or suspect evidence(.)" Def. Cuthbert's Brf. at 2 (emphasis added). Even conceding that point, no reasonable person looking at Agent Cherundolo's extensive, forty-four page affidavit could conclude that the information from the Colombian wiretap formed the "sole" basis upon which the United States wiretap was approved.

Moreover, the cases upon which Defendant purports to rely are, in reality, far more helpful to the Government. For instance, the court in *United States v. Gambino*, 734 F.Supp. 1084 (S.D.N.Y.1990), upheld a series of challenged wiretaps that suffered from far greater defects than those alleged to exist here, including the fact that agents used a third party, who was not a police officer, to place the bugs. Similarly, the court in *United States v. Whitehorn*, 829 F.2d 1225 (2nd Cir. 1987), held that agents' warrantless search of an apartment did not fatally contaminate their later, lawful search of the apartment. The court held that the affidavit—even redacting the material seen during the first search—recited ample basis for a finding of probable cause, and that discovery of the material found during the first search was "inevitable," since agents were in the process of securing a warrant anyway. Far from advancing Defendants' cause, these cases reject exactly the sort of ultra-literal interpretation of affidavits that Defendants urge here.

## C. Defendants' Claim under Franks v. Delaware

■ Where, as here, a defendant seeks to suppress evidence found during a duly authorized wiretap on the grounds that the affidavit used to secure the wiretap order contained material misstatements or omissions of fact, the challenge proceeds under the framework for evaluating search warrants established by the Supreme Court in *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). *See United States v. Green*, 175 F.3d 822, 828 (10th Cir.1999) ("The application and affidavit for wiretap authorization are subject to the requirements of *Franks v. Delaware*"). Under *Franks*, when a defendant makes a substantial preliminary showing that the affidavit contained a materially false statement, which the affiant made intentionally, knowingly or recklessly, the Fourth Amendment requires the Court to hold an evidentiary hearing as to the sufficiency of the affidavit if the Defendant so requests. Specifically, *Franks* requires that:

> (T)here must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient.

*Franks*, 438 U.S. at 171, 172, 98 S.Ct. at 2684 (footnote omitted). In addition, *Franks* provides that, if the court finds that the challenged affidavit would have been sufficient to support issuance of the warrant apart from the allegedly false information, no hearing is required. *Id.*

As Defendants acknowledged at the hearing, the only falsehood they allege is that Agent Cherundolo lied as to the legality of the Colombian wiretaps that furnished information linking the Atlanta telephone number to drug trafficking activity.[11] The question of whether Defendants are entitled to a hearing under *Franks* is inextricably intertwined with the legal arguments underlying the merits of their motion. The Court has found, *supra* at Sections A and B, that Defendants have failed to show that Title III should have applied to the Colombian wiretaps, and have further failed to allege any substantive violation of their rights under the Fourth or Fifth Amendments to the United States Constitution, even granting the questionable assumption that such rights did apply to a wiretap conducted by a foreign agency. Thus, it follows that Defendants have failed to show that Agent Cherundolo's statement as to the legality of the Colombian wiretaps was a knowing

---

**11.** Agent Cherundolo's affidavit characterizes the wiretap as "legal" in at least three passages. Aff. at ¶¶ 5, 9B, 37(a). While, for purposes of argument, accepting Defendants' interpretation that Agent Cherundolo was opining as to the applicability of United States law to the Colombian wiretap, the Court's review of the affidavit finds that Agent Cherundolo did not actually refer to *United States* law in his affidavit. The first reference to the lawfulness of these wiretaps appears at page 5 of the affidavit and reads, in its entirety, "However, I am aware of a legal telephone wiretap in Bogata, Colombia, signed by an authorized individual pursuant to approval DNF/2128 RCP, Article 351 of C.P.P., that is currently intercepting conversations of Jose Nemerlo Tascon–Casceido." The most natural and logical reading of this statement is that "legal" refers to the authorization obtained under Colombian law, which Defendants have not questioned. To find that the use of the term "legal" was a material falsehood on the grounds that it meant United States law would require inferring that an issuing judge would misinterpret this seemingly unambiguous statement.

or reckless falsehood, so as to entitle them to a *Franks* hearing. Moreover, even if the Court were to find that Agent Cherundolo knowingly or recklessly made such a false statement, the material provided by the Colombian wiretaps was such a minor element in the affidavit that its deletion would not have altered the judge's decision to issue the wiretap order.

### 1. Knowing or Reckless Falsehood

Given that Agent Cherundolo's affidavit expressly refers to the approval of the Colombian wiretap by Colombian authorities, it requires some stretch of the imagination to conclude that Agent Cherundolo intentionally misled the issuing judge about the legality of that wiretap under United States law. Nevertheless, even if it were to be found that Agent Cherundolo's statement was intended to refer to "legality" under Title III, and even if a reviewing court were to disagree with the undersigned and find Title III applicable, this Court could not find such statement to be knowingly or recklessly false, given the absence of authority in this Circuit that Title III applies to foreign wiretaps and the existence of authority from at least two other Circuits to the contrary. It thus follows that, to the extent that Defendants allege that Agent Cherundolo's "lie" about the legality of the Colombia wiretaps was based on the failure to obtain Title III clearance for the wiretaps, Agent Cherundolo cannot be guilty of making a false statement.[12]

Further, because Defendants have alleged no facts supporting their claim that their Fourth or Fifth Amendment rights were violated by the Colombian wiretap, the Court cannot conclude that Agent Cherundolo lied about the legality of the Colombian wiretap under the United States Constitution. It is Defendants' burden at this juncture to make some affirmative showing both that the statement was false (here, that a constitutional violation took place) and that the affiant had some basis for knowing that it was false. Defendants have failed on both counts. Accordingly, the Court finds no false statement entitling Defendants to a *Franks* hearing. *See United States v. Haimowitz*, 706 F.2d 1549, 1556 (11th Cir.1983) (defendants failed to make requisite showing for *Franks* hearing where motion contained "nothing more than conclusory allegations, unaccompanied by any offer of proof" as to falseness of affidavit); *United States v. Leisure*, 844 F.2d 1347, 1359 (8th Cir.1988) (no *Franks* hearing required where defendants failed to make offer of proof that government actually knew of alleged falsehoods).

### 2. Materiality

Even if Defendants had made a sufficient showing that Agent Cherundolo knowingly or recklessly included a false statement in his affidavit as to the legality of the Colombian searches, the Court would find that no *Franks* hearing is required—and hence, that no challenge to the wiretap order may proceed—because Agent Cherundolo's affidavit set forth ample basis upon which a judge could have

---

**12.** As the Supreme Court established in *Franks*, the "truthfulness" of a search warrant affidavit does not require that each and every statement be correct, but only that the information set forth be believed or appropriately accepted as true by the affiant. 438 U.S. at 165, 98 S.Ct. at 2681. Even assuming that his statements as to legality were opinions under United States law, Defendants have provided no basis upon which the Court could conclude that Agent Cherundolo was reckless or worse in swearing that the Colombian wiretaps were lawful. *See United States v. Van Horn*, 789 F.2d 1492, 1500 (11th Cir. 1986) (party seeking suppression bears burden of showing that omissions rendering wiretap affidavit misleading were something more than negligent).

approved the United States wiretap apart from the Colombian wiretap. Indeed, upon close examination, it appears that the information gleaned from the Colombian authorities added very little of value when compared with the mountain of independently gathered evidence that Defendants do not challenge.

The evidence furnished by the Colombian DAS telephone tap comprises two paragraphs in a forty-four page affidavit. One call from Colombia to the target telephone intercepted on November 4, 1999, yielded nothing of value because the caller reached a recording, said "hello," and hung up. Aff. at ¶ 18. A second call intercepted on November 5, 1999, did produce some evidence—albeit in coded form—that the participants were engaged in the transport of drugs or drug money to Atlanta. Aff. at ¶ 19. Even this call, however, was of limited use toward obtaining a wiretap order on the target telephone because the Colombian intercept did not capture the Atlanta number in its entirety; the best that DAS agents could say is that the tapped Colombian telephone was contacting someone in the 678 area code.

In contrast to this sketchy information, Agent Cherundolo's affidavit goes on to enumerate literally hundreds of telephone credit card calls from the target telephone to people in the United States and Colombia who were suspected by DEA of involvement in drugs, which were captured by a pen register placed by DEA agents between October of 1999 and January of 2000. Among the notable contacts documented by DEA agents were: seventy-one calls to the Hialeah, Florida, telephone of Defendant Mercedes Porto, who had been stopped previously by United States Customs agents on suspicion of smuggling currency into the United States from Colombia (Aff. at ¶ 31); twenty-three calls to the New York home of a convicted heroin dealer (Aff. at ¶ 35), and three calls to the wife of a Colombian national who was, at the time, serving prison time for conspiracy to import cocaine (Aff. at ¶ 36).

Most significantly, the affidavit indicated that United States Customs agents were otherwise aware of the target telephone number in October of 1999 because a confidential source ("CS–1"), who had provided reliable information in the past, was given that number by members of a Colombian drug trafficking ring as his contact number for setting up money-laundering transactions. Aff. at ¶ 16. This information, contrary to the assertion in Defendant Letisha Moore's brief, indicates that United States authorities did not need the Colombian wiretap to alert their suspicions to the target telephone number.

In addition, authorities had circumstantial evidence strongly suggesting that the target telephone was being used in furtherance of drug activity. This evidence, as presented in the affidavit, included: (1) frequent use of telephone calling cards from a variety of different providers, which Agent Cherundolo, as an experienced drug agent, knew to be a technique employed by drug dealers to evade detection (Aff. at ¶ 21); (2) use of the telephone in a pattern—first in major metropolitan areas, then in port cities—consistent with the manner in which drugs and drug money are moved into the country (Aff. at ¶ 20), and (3) frequent changes in the number issued to the targeted cellular phone, which agents knew to be a method used by drug dealers to conceal their activity (Aff. at ¶ 22).

■■■ The standard for assessing the adequacy of an affidavit in support of a wiretap is that same as that applied to affidavits in support of search warrants. *United States v. Leisure,* 844 F.2d 1347, 1354 (8th Cir.1988). A reviewing court's inquiry is limited to whether the issuing judge "had a substantial basis for ... con-

cluding that probable cause existed." *Illinois v. Gates*, 462 U.S. 213, 238–39, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). *See also United States v. Davis*, 882 F.2d 1334, 1343 (8th Cir.1989) ("An affidavit provides ample information to establish probable cause if it presents facts and circumstances that, when viewed in their totality, support a reasonable belief that by employing the wiretap incriminating evidence against the target of the investigation will be obtained."). Probable cause does not require overwhelmingly convincing evidence, but only "reasonably trustworthy information." *Ortega v. Christian*, 85 F.3d 1521, 1524 (11th Cir.1996). It must be judged "not with clinical detachment, but with a common sense view to the realities of normal life." *Wilson v. Attaway*, 757 F.2d 1227, 1236 (11th Cir.1985). As this Circuit has long held, suppression is not required where information apart from that acquired during an illegal search is sufficient on its own to establish probable cause, so long as the decision to seek the warrant was not prompted by what was found by means of the illegal conduct. *United States v. Chaves*, 169 F.3d 687, 692 (11th Cir.1999).

Viewing the affidavit here in its totality and without reference to the challenged Colombian wiretap, the Court finds that the affidavit contained more than adequate evidence to sustain a finding of probable cause. Agents knew that the target phone number had been supplied to a reliable source as one to call for information about laundering drug money; that dozens of telephone calls were made from the subject phone to people with known or suspected involvement in drug smuggling, and that the pattern of telephone usage was consistent with what agents knew drug dealers typically did to avoid detection. Because the allegedly false statement as to the legality of the Colombian wiretap would not contaminate the vast bulk of this evidence, the Court finds that the chal-

lenged statement was not material to the determination of probable cause. *See United States v. Sims*, 845 F.2d 1564, 1571 (11th Cir.1988), *citing United States v. Ofshe*, 817 F.2d 1508, 1513 (11th Cir.1987) ("Insignificant and immaterial misrepresentations or omissions will not invalidate a warrant."). Accordingly, even if Defendants were able to show that the affiant made a knowingly or recklessly false statement to the issuing judge, they would not have made an adequate showing to require a *Franks* hearing.

### RECOMMENDATION

For all the above reasons, the undersigned **RECOMMENDS** that Defendants' motions to suppress evidence gathered as the result of electronic wiretaps [178, 181, 182, 184, 186, 190] be **DENIED.**